## J. C. RILEY v. J. T. MOSELEY, Admr., etc.

1. ADMINISTRATOR—LOCAL—FOREIGN—AUTHORITY.—It is well settled that the grant of letters of administration confers the office or trust in the state only where the grant is made; and that a party cannot sue or defend, as executor or administrator, in this state, under the authority of a foreign court of probates.  Our courts do not

recognize an administrator appointed in another state. Letters of administration extend only to the assets within the state where conferred.

2. SAME—LOCAL AND FOREIGN JURISDICTION—PRACTICE.—The representative character, as well as the assets, are local, and the administrator has no authority to sue for and collect assets in a foreign jurisdiction. Assets are subject to the sovereignty of the state or country where they are situated, and are disposed of according to the laws of that jurisdiction.

3. COMITY—PRACTICE—LEX LOCI REI SITÆ.—The comity of all civilized nations recognize and adopt the law of the domicile of the intestate, as indicating who shall take the estate, wherever situated, by succession or distribution; but creditors are marshaled and priorities settled by the law of the *sita* of the assets. Story's Conflict of Laws, § 514. The sovereignty of a state should govern all the property within its limits, without regard to the residence of the owner; and it may discard the *lex domicilæ*, in the distribution.

4. PROBATE COURT—PRACTICE.—Our courts will not revoke the probate of a will and letters testamentary of a testator, domiciliated in another state, where a portion of his property was in this state at the time of probate of the will; and it is the imperative duty of the courts of a state where the property of a decedent may be found, to take authority over it for the benefit of those entitled to the succession, and also of the creditors.

5. CASE AT BAR—FOREIGN ADMINISTRATION—CHANCERY.—M. sold to R. a tract of land in Tennessee in 1863, for a fair price and took R.'s note for the amount at one day after date. M. shortly afterwards went to Memphis, with the intention of returning, but died there. He had with him in Memphis, at the time of his death, R.'s note and several thousand dollars in Confederate money, worth about fifty cents on the dollar in United States currency. Shortly afterwards the probate court of Memphis granted to W. letters of administration on M's estate. In 1865 R. resided in Memphis and did business there, and paid to W. the amount of his note. W. was. notoriously insolvent, which R. well knew. At the time of this payment there was no administration in Mississippi on M.'s estate, nor was there any at the time this suit was begun. R., at the time of his purchase was, and still is, a citizen of DeSoto county. *Held:* That R. had a legal right to pay his note to W. in Tennessee, and to institute this suit for a title to his land.

Appeal from the chancery court of DeSoto county. TROTTER, J.

The facts of this case are sufficiently stated in the opinion of the court.

The appellant assigned the following error:

That the court below erred in the final decree in denying the relief sought by the bill of complaint, and in granting the prayer of the defendant's cross bill.

*White & Chalmers,* for the appellant.

If the payment made by complainant to Wimberly, the Tennessee administrator, was a good payment, then he was

clearly entitled to a deed, and the decree below must be reversed. According to the terms of the title bond which he held he was to have a deed whenever he paid off his note; and if paid to the proper party he had a right, through the chancery court of the county where the land was situated, to demand and receive a deed.

Whether that payment was properly made and was a valid payment must depend on two questions:

1st. Did the probate court of Shelby county, Tennessee, have authority to appoint an administrator upon the estate of Wm. Moore, he being a citizen of Mississippi?

2d. If so, is a payment to such administrator in Tennessee, by a citizen of Mississippi, temporarily living in Tennessee, a valid payment?

1st. Clearly the probate court of Shelby county had authority to appoint an administrator. William Moore died there. "He had with him in said county and state, at the time of his death, personal property, including, among other things, the note against Riley and several thousand dollars in money."

Administration will be granted in any state where the decedent has property. Wells v. Wells, 35 Miss., 666; Still v. Corp. of Woodville, 38 Miss., 646.

The mere fact alone that Riley's note was in Tennessee at the time of Moore's death was sufficient to warrant the appointment of an administrator there. That note was under seal.

"Debts evidenced by bond or specialty are accounted property so far as to authorize letters of administration where the bond or specialty is at death of holder." Smith v. Union Bank, 5 Peters, 525, and authorities there cited.

But this question, if there is any question about it, is put at rest by the provisions of the Code of Tennessee: "Letters testamentary or of administration may be granted upon the estate of a person who resided at the time of his death, in some other state or territory of the Union, or in a foreign country, by the county court of any county in this state,

where the deceased had any goods, chattels, or assets, or any estate, real or personal, at the time of his death, or where the same may be when letters are applied for." Code of Tennessee, 445, § 2203.

2. It is no less evident that the payment made by Riley to the Tennessee administrator in the city of Memphis was void. The charge that it was fraudulently made is wholly unsustained, and is virtually abandoned in the agreement of counsel. Nor is the fact that Riley knew that Wimberly was individually insolvent, any more conclusive. Wimberly, of course, gave bond as administrator of Wm. Moore's estate. It is to be presumed that the probate court of Shelby county did its duty and required good sureties on that bond. If he has squandered the money which he received from Riley, the remedy of the heirs is upon the bond.

"Payment to a foreign administrator is good if made in the state where such administrator's letters were granted." Story's Conflict of Laws, §§ 513–516; Stevens v. Gaylord, 11 Mass., 256; Doolittle v. Lewis, 7 Johns. Ch. R., 45–49; Schultz v. Pulver, 3 Paige, 182; Young, admr., v. O'Neill, 3 Sneed (Tenn.), 55.

*Walter & Scruggs*, for appellees.

The simple statement of this case apparently justified the court below in refusing a specific performance to complainant. In the case of Doolittle v. Lewis, 7 Johns. Ch. R., 46, the court held that administration extends to the assets only in the state where granted. If it were otherwise, said the court, assets might be drawn out of the state to the great detriment of domestic creditors, and be distrsbuted under laws differing, etc.

So tenderly has this court felt on this subject of comity, that it has compelled one of its own citizens to procure a legacy from an executor in another state, where there was, at the time, an ancillary administration, and ample funds in this state. Lovelady v. Davis, 33 Miss., 577. The truth is, Moore was a citizen of Mississippi at the date of his death,

and even if he had intended to change his domicile, that change would not have been effectual until he actually acquired another. Thorndyke v. Barton, 1 Met., 245; Hairston v. Hairston, 27 Miss., 721; Barnpede v. Johnson, 3 Ver., 198. In the case of Sturdevant v. Newell, 27 Miss., 157, the testator was a citizen of Mississippi both at the date of his will and his death, which occurred in Tennessee whilst testator was on a visit to Knoxville. His will was probated there according to the laws of Tennessee, yet our court held the probate a nullity because the court in Tennessee had no jurisdiction. See also, Morris v. Morris, 27 Miss., 847; Wells v. Wells, 35 Miss., 666.

The rule is that comity will not be observed where it violates the law or the rights of the citizens of a state. Forbes v. Cochran, 2 Barn. & Crss., 448; Whistan v. Stodder, 8 Martin, 95; Saul v. his creditors, 17 ib., 569–595–6; Story's Conflict of Laws, §§ 22, 23–25–28, 29.

The mere taking care of property of a decedent, superintending his burial, paying funeral expenses, and even making an inventory of his property, does not make the person thus acting an executor *de son tort.* 1 Williams on Executors, marg. p. 229, and authorities cited; also, Nesbitt v. Stewart, 2 Dev. & Batt, 24; Morgan v. Ryan, 4 Bennett, 196.

But appellant was equally to blame. He must have been warned not to pay this note, as he tells us that he consulted counsel on the subject. Clopton v. Bolton, 23 Miss., 78, deciding most strongly against the defendency of covenants, declared such a contract as this, to be of defendent covenants. Even Johnson v. McMath, 41 Miss., 439, holds it so. The other class of cases, like Pegues v. Mosely, 7 S. & M., 340; Feemster v. May, 13 S. & M., 275, and the long list of succeeding decisions, down to Johnson v. McMath, held even stronger grounds in favor of the defendency of covenants.

An executor or administrator who has qualified in another state may sue in this to recover a debt if he will satisfy the court here that the debt is included in his inventory, and files

a copy of his bond. Rev. Code, 457. Without this he will
not be permitted to withdraw the funds from this state.
Neither can an executor or administrator be permitted to
remove the property from this state without the permission
of the court. Rev. Code, 466. · The debt in this case consti-
tuted a fund in this state, and the debtor, by his voluntary
payment, virtually brought about a removal or transfer of
this fund to another state, in contravention of this prohibi-
tion.

But there is another fact in this case that fully justified the
court below in disregarding this payment. The clerk below
was ordered to take and state an account of what was due on
this note. He did so. He reported on the 8th of February,
1868, the amount due on the note was $1,400. No exceptions
were taken to this report, and it is therefore to be taken as
true. There was then actually due on this note, on the 11th
of December, 1865, when Riley says he paid it, over $1,260.
And yet he pays to a man whom he knew to be insolvent,
$1,000 for this amount of 1,260.

Courts of equity will never decree a specific performance in
favor of any one who has not observed good faith on his part.
See the case of Seton v. Slade, 2 Equity Leading Cases, 1,
and all the authorities, both English and American, referred
to in the notes.

The case of Shultz v. Pulver, 3 Paige, 182, relied on by the
counsel for appellants, is in our favor, as we conceive, and
we invoke its aid. The case of Young v. O'Neil, 3 Sneed,
55, is equally unfortunate for appellant, though relied on by
him; as is also the case from 11 Mass. R., 256, and we like-
wise invoke their aid.

SIMRALL, J. :

The single question for solution in this case is, whether the
payment made by Riley to Wimberly, the administrator in Ten-
nessee, of Moore, deceased, was a legal discharge of the debt.
This question arises on this condition of facts: Moore, the
decedent, sold to Riley, and gave bond to make title on pay-

ment of the money, a tract of land in DeSoto county, Mississippi, in 1866, for $2,500 in Confederate money. Riley gave his note at one day after date, which was a fair price at the time. Shortly after the sale, Moore, in feeble health, went to Memphis Tennessee, for medical advice, and died, but with intention of returning to Mississippi. He had with him in Memphis, at the time of his death, Riley's note and several thousand dollars of Confederate money, worth about fifty cents on the dollar in United States treasury notes, or greenbacks. Shortly after his death the probate court at Memphis granted to Wimberly letters of administration on his estate. Riley, in the summer, fall, and winter of 1865, lived in Memphis, engaged in business, and then paid to Wimberly his note. Wimberly was insolvent, personally, notoriously, and known to be so to Riley. At the time of this payment there was no administration in Mississippi on Moore's estate, nor were letters granted here until after this suit was begun. Riley, at the date of his purchase, was, and still is, a citizen of DeSoto county, Mississippi.

It is well settled that the grant of letters of administration confers the office or trust, only in the state where the grant is made, and that a party cannot sue or defend as executor or administrator, in this state under the authority of a foreign court of probates. The courts of this state do not recognize an administrator appointed in another state. Before we treat the personal representative of a decedent as clothed with that character, he must be invested with it by our own courts, according to our law. The letters of administration only extend to the assets within the state where conferred. If it were otherwise, assets might be withdrawn from the state to the inconvenience and prejudice of domestic creditors, and applied on terms different than prescribed by a foreign jurisdiction. Morril v. Dickey, 1 Johns. Ch. Rep., 153; Doolittle v. Lewis, 7 John. Ch. Rep., 48. Because of this territorial limit to the authority of the administrator, in a case of debt due from the Duke of York to the Elector of Hesse, an administrator limited to the collection of the debt,

was granted by the Ecclesiastical court of England to an agent of the German Elector. 1 Hagg. Ecclesiastical Rep., 93.

In the case of Stephens v. Gaylord, 11 Mass. Rep., 262–3, the plea was, the defendants had been appointed administrators of Sabbatts, the deceased, in Connecticut, and, as required by law, had returned an inventory of the assets and credits of the intestate, including the notes sued on. The objection made to the plea was that it did not aver that the intestate resided at the time of his death in Connecticut. The point, however, was held to be immaterial, the right of granting administration not being limited to the state or county where the deceased last dwelt or had his domicile. Also, Harvey v. Richards, 1 Mason, 381.

In Young v. O'Neil, 3 Sneed, 57, the testator resided in Illinois, and there made his will, which was probated and letters testamentary granted. Prior, however, to his death, he had left with a party in Tennessee the note in question for collection. His executor came to Tennessee and collected the note. It was held that this was not a good discharge. "If the creditor had been in Illinois and had made payment either compulsory or voluntarily to the executors, it would have been good," for the debt has no *situs*. The action was transitory, and he could have been sued in Illinois. Story on Conflict of Laws, § 513, *et seq.* The representative character, as well as the assets, are local. The administrator has no authority to sue for and collect assets in a foreign jurisdiction. Those assets are subjected to the sovereignty of the state or country where they are situated, and are disposed of according to the laws of that jurisdiction. The comity of all civilized countries recognize and adopt the law of the domicile of the intestate as indicating who shall take the personal estate, wherever situated, by succession or distribution, unless the positive local laws prescribe a different rule. But creditors are marshaled and priorities settled by the law of the situs of the assets. Story's Conflict of Laws, § 514; Doolittle v. Lewis, 7 Johns. Ch. Rep., 47; McRea's administrator v. McRea, 11 Louisiana, 571; Selectmen of Boston

v. Boylston, 2 Mass., Rep., 391. It pertains to the sovereignty of every country and state to govern all the property within its limits without regard to the residence of the owner. It has the right, should it choose so to do, to discard the *lex domicilii* in the distribution. Wells v. Wells, 35 Miss. Rep., 667.

In Still v. Corporation of Woodville, 38 Miss. R., 650, an effort was made to revoke the probate of the will of one Brown and the letters testamentary, on the ground that the testator was domiciled in Louisiana, and it pertained to that state to take the jurisdiction. It was held, however, that it made no difference whether Brown was domiciled in Louisiana or not, and whether the rights of the plaintiffs were such as they claimed under the law of Louisiana (forced heirs), or not, if it appeared that a portion of the property of the decedent was in this state at the time of the probate of the will, and the courts of Mississippi were bound to take charge of it. It is the imperative duty of the courts of a state, where the property of a decedent may be found, to take authority over it for the benefit of those entitled to the succession, and also of creditors. Garland v. Bowan, 2 S. & M., 617.

Lovelady v. Davis, executor, 33 Miss. R., 578, was an attempt to enforce a legacy from an administrator with will annexed, in this state. The testator being a resident of Louisiana at the time of his death, and his will being probated in that state, it was quite distinctly intimated that a claim of that sort was more properly for the adjudication of the courts of Louisiana against the executor in chief; but that there was no doubt that the creditors in this state could proceed against the ancillary administrator for the payment of their debts, the funds in his hands being liable thereto.

The cases of Sturdevant v. Newell, 27 Miss. Rep., 157, and Morris v. Morris, 27 Miss. Rep., 850, to which we have been referred by the counsel for appellee, only affirm the well established doctrine that the will of a resident, or domiciled citizen or inhabitant of this state, must be executed according to the ceremonies and solemnities of the laws of Missis-

sippi.  The testators in those cases being on a temporary absence from home, whilst *in transitu,* in the one instance, through New York, and in the other through Tennessee, sickened and died.  It was held that the original probate of the wills ought to have been made in this state.  Neither of the cases have any influence on the question made in this record.  If these decedents had left assets in New York and Tennessee, it is too plain for disputation that those assets would have been subject to the law and the courts of the respective states, and that the authority to apply them to creditors, and the surplus to distributees, is well established· As to the surplus, distribution might have been made directly to those entitled, or it might have been remitted to the forum of the domicile, to be there distributed.

We are not able to see that the character of the covenants of the intestate and Riley has any important concern on this question.   Concede that the making of the deed by Moore and the payment of the money by Riley were dependent covenants, yet if Moore chose to make the deed before the money was paid, there was nothing improper or illegal in the act.   The utmost that could be said of it is, that he weakened his position and security by parting with the title before payment of the money.   So if Riley paid his note before he got his deed he may have diminished the inducement to Moore to make a prompt conveyance.   The payment of the debt, however, by no means injuriously affected the right of Riley to call for the title.   His right, instead of being conditional or dependent, became absolute.

The statutes of Tennessee, revision of 1858, p. 446, among other things, provide for an administration on the " estate of a person who resided at the time of his death in some other state or territory, or in a foreign country, by the county court of the county where the deceased had any goods, chattels, or assets, or any estate, real or personal, at the time of his death, or where the same may be when the letters are applied for."   Page 448, art. 2222.

Before the letters are issued " the administrator must enter

into bond, with two or more sufficient sureties, in a penalty double the value of the estate." Moore, at the time of his death, at Memphis, had with him several thousand dollars in Confederate money, worth half the nominal amount in United States currency, and also Riley's note. It was the duty of the courts of Tennessee, in accordance with her statute framed for the purpose of discharging the obligations of comity which an enlightened civilization imposes on all states and countries, to gather up and secure these assets in the interest of creditors and distributees.

Riley, the debtor, being in Tennessee on business, could have been sued by the administrator there on his note. There was not then, nor until long after he had paid off his debt, any person except Wimberly, to whom he could have made payment. It is quite true, if he had been sued on the note, that he might have transferred the litigation to the chancery court and called upon the heirs of Moore, who were residents of Tennessee, to make him a deed contemporaneously with his parting with his money, or he could have paid his note, and afterwards resorted to the chancery court for the legal title. Nor is there anything in the personal insolvency of Wimberly. We must suppose that the creditors and distributees are protected by his bond. There is nothing in the record impugning the fairness and good faith of Riley in the transaction. We are of opinion, therefore, that the payment of the note made by Riley to Wimberly, administrator, was a legal discharge of the debt. The decree of the chancellor is reversed, and the cause remanded for further proceedings in accordance with this opinion.