J. T. JEFFERSON et ux. *v.* C. C. GLOVER, Guardian.

1. GUARDIAN — LIABLE HERE FOR A BALANCE DUE WARD IN ANOTHER STATE, IF HE OBTAIN LETTERS OF GUARDIANSHIP HERE, AND REPORTS TO THE COURT HERE THE BALANCE DUE FROM HIM IN THE OTHER STATE — CASE IN JUDGMENT.— G. was guardian in Tennessee, and, in 1861, made a settlement with the county court in Tennessee, by which he was brought in debt $14,408 72 to his ward. In January, 1861, G. obtained letters of guardianship for said minor in Bolivar county, in this state, and filed a transcript of this proceeding in the county court in Tennessee, and thereupon obtained an order of that court for the removal of the property of his ward to Mississippi. At the July term, 1868, of the probate court of Bolivar county, G. propounded a final settlement of his account as guardian, in which he charged himself with $14,408 72, as above. The account was excepted to by the ward on some grounds, and, pending the trial of these exceptions, G. moved to strike from the debits of his account the item of $14,408 72, which was allowed by the probate court: *Held*, to be error.

2. SAME — LIABILITY OF GUARDIAN FOR INTEREST.— A guardian cannot be required to pay interest on balances on his account, unless he has consented to take the same on interest, or has loaned out the money at interest, with consent of the court, or used it in his own business, or otherwise made profit.

3. SAME — SAME — CASE CITED.— The case of Crump v. Gerock et ux., 40 Miss. 768, cited as applicable to this on the question of liability of guardian for interest.

4. SAME — LIABILITY OF GUARDIAN FOR HIRE OF SLAVES OF HIS WARD.— Where a guardian retained to his own use the slaves of his ward, under an order of the probate court, at an assessed value, as provided by statute, for the year 1861, and, without any application to the court, continued to keep and use the slaves in 1862, he is liable for their hire.

APPEAL from the probate court of Bolivar county. GAMBLE, J.

The opinion of the court fully states the case except as to the facts in reference to the hire of the slaves of the ward. The evidence on this point was, that they were retained by the guardian to his own use as hirer, by order of the probate court, at an assessed value for the year 1861, and afterward, without any further order of court, remained in the service

of the guardian, on his plantation, until June, 1862, when they were dispersed and so remained, and were of little value ; and, although the guardian hired out some of them and received Confederate money to some extent, they were, as a whole, of little or no value but rather an expense after 1863. The probate court charged the guardian with hire to June, 1862, but not afterward.

*Ellett & Phelan*, for appellants.

The following cases fully establish the liability of this guardian in Mississippi for the balance found against him on his last settlement in Tennessee, which he was authorized to remove, and did report to the court in Mississippi, in his final account, under oath: 2 Smedes & Marsh. 532 ; 30 Miss. 159 ; 36 ib. 69 ; 40 ib. 765 ; 41 ib. 385. It was, therefore, gross error for the court to have permitted the guardian to strike this charge against himself from his "final account" with his ward. This motion of the guardian to strike out the charge against himself of $14,408 having been sustained, thereupon was heard the exceptions plead by the ward to said "final account."

The first exception is, because the guardian had not charged himself with interest on the said balance, from January 1, 1861.

The "balance" itself having been stricken out, of course the above exception was not sustained. But if properly chargeable with that "balance," he is certainly also chargeable with the interest under the facts of this case. This question underwent a careful review in the case of Reynolds v. Walker, 29 Miss.; which establishes the liability of the guardian to pay interest on a "reported balance of money" in such cases as the one at bar. The guardian, in this case, by his own testimony, admits "that he did use the said money in his business indiscriminately with his own, and did not keep it separate therefrom." Again, he did not return an annual account of said money, as required by law, and thereby prevented "a profitable disposition"

of the same.  On either of these grounds, the guardian is to be charged with interest.

The second exception was, because guardian did not charge himself with interest on $787 50, being half the assessed hire of negroes kept by himself in 1861.  This $787 is a debt due by himself, as an individual, for negroes of his wards, hired by himself, under an order of the court; the value of said negroes having been assessed by commissioners.  Why he should not pay interest on his own debt we cannot imagine.

It was admitted that the guardian did retain the negroes for 1861 "to his own use," at the price of $1,575.  The order permitting the guardian to retain the negroes to his own use was general; it was not restricted to 1861.  The assessed value was, of course, for that year.  If the guardian did not desire longer to "retain them to his use," it was his duty to have·so reported to the court, so that an order to hire to others might have been obtained.  This he did not do, but retained them and used them as his own.  He took the chances, and must abide by his choice.  Had the services of the negroes been valuable as to the proceeds of their labor, he would not have charged himself with the same, as belonging to his wards !  His testimony does not at all relieve him from this liability.  The court only charged the guardian for hire up to June 1, 1862, at the rate assessed by the commissioners, and overruled the balance of the exception.  This was error.

This case presents, in its facts, a shocking disclosure of an attempt on the part of a guardian to deprive two orphan girls of their entire estate.  He was a stranger who obtained control of their funds and property by a marriage with their mother.  We cannot debate with becoming temper our view of the enormity of his conduct.  In short, he obtains possession of their estate.  He obtains letters of guardianship in this state.  He exhibits a certified copy of those letters to the court in Tennessee, as a reason for removing their estate to Mississippi, and petitions the court to be permitted to

make said removal, which is granted; and he settles with the court his "final account," in Tennessee. Instead of immediately making a report to the court in Bolivar of the money then in hand, he alleges, in his own wrong, that he did not so report it; that he did not bring it to Mississippi; that he lent it out on his own authority in Tennessee; used it as his own; has but few of the notes really given to him as guardian, and that they are worthless. And this shameless private wrong and confession of breach of a most sacred trust is his defense against the entire loss of the little estate of two orphan girls of whom he became the father. " God save the mark."

The record, we suggest, will justify the court in expressing its condemnation of the wickedness of the guardian, and of the stupidity or corruption of. the court by which he was sustained.

*W. & J. R. Yergers,* for appellee.

1st. Was Glover accountable to the probate court of Bolivar for the sum of $14,408 72, received by him while guardian in Tennessee and charged in his account rendered in the county court of Fayette county, in December, 1861? 2d. If liable to account, in the probate court of Bolivar, for this sum of money, is he liable to account for interest on that sum, or interest on the hire of the slaves for the years 1861 and part of 1862? 3d. Is he liable for the hire of the slaves after June, 1862, till the emancipation of the slaves in 1865?

Upon the first question, it may be remarked, that we do not deny the liability of Glover to account, in some proper tribunal, for the sum of $14,408 72, received by him, in Tennessee, as guardian of the children. There is no question of his liability to account; but the question is, whether the probate court of Bolivar county can compel him to account. Whether the ward could maintain a bill for an account in a court of equity in Mississippi, or whether an action at law in Mississippi could be maintained, for the

money reported by him to be due the ward, in the report made in December, 1861, to the county court of Tennessee, are questions which this record does not present, and, therefore, need not be affirmed or denied. They are foreign to the case before the court. The money for which he is called on to account was received in Tennessee, while all parties were domiciled there, under authority conferred upon him by the laws of that state; was reported in his account to the court from which he received his appointment, and was never brought into the state of Mississippi or within the jurisdiction of the courts of Mississippi. Has the probate court of Mississippi, a court of special and limited jurisdiction, power to compel him to account for this money? In this question, the sureties of Glover are more interested than he is. He is liable to account somewhere and before some tribunal for this money. But if not liable to account in Mississippi, in the probate under the appointment as guardian made by that court, the sureties on his bonds in Mississippi are not liable for this amount.

In the first place it appears from the record that the sum of $14,408 72 was received by Glover while acting as guardian in Tennessee. It was received by him under his Tennessee appointment and while he and his wards were both domiciled in Tennessee. It was made up of the funds received from the hire of the slaves of his wards after his appointment in 1854, and of $5,459 98 received by him from the guardian who had preceded him. It was all income from the lands and slaves of his wards, situated and being in Tennessee, and while all parties resided there. Glover, in his testimony, says "he loaned out on interest the said balance of $14,408 72, as charged in his account. Most of it was invested in notes, in fact, all of it. The money was not brought to Mississippi, but was invested in Tennessee." There is not the slightest evidence to contradict this. In fact, it is clear and indisputable, from the whole record, that not one dollar of this money was ever within the jurisdiction of this court or the laws of Mississippi. Glover bought

land in Mississippi in 1859.   He moved his family here, his wards included, and their slaves in 1860; and in February, 1861, he qualified as guardian in Mississippi.

We lay down this proposition, which, we think, can be maintained beyond a doubt, to wit: The probate court of Mississippi has only jurisdiction to compel a guardian to account for property situated in the state of Mississippi, or which comes into her hands by virtue of his appointment as guardian in the state of Mississippi; or which, by virtue of that appointment, he can reduce into his possession in the state of Mississippi; and, that it has no jurisdiction to compel him to account for property received by him as guardian, by virtue of an appointment in another state, and which was never brought into the state of Mississippi.   It may be laid down as a general rule, without any statutory provision, that a guardian or other trustee has no right, in fact, that it is a breach of his trust and of his duty, to remove the property of his wards or the trust estate beyond the jurisdiction of the court from which he received his appointment, or the jurisdiction of the laws where the trust property is situated and came into his hands. We presume all the states have statutory regulations on this subject.   In Mississippi it is regulated by the provisions of the Rev. Code of 1857, art. 145, ch. 60, art. 158, ch. 60, pp. 461, 465.

In Tennessee the following provisions have been made by the statute law in reference to the removal by guardians of the property of their wards beyond that state:   "Where a minor and his guardian are residents of any other state or territory of the union, or such minor having had a guardian appointed, have removed from the state, his property here may be removed to the state or territory of his residence. Whether it exists in kind and is in the hands of a guardian or of a personal representative appointed here, or in the hands of any other person, or has been reduced into money, or recovered in kind by the judgment, order or

decree of a court here, and remains in its custody or in the hands of its officers." Code of Tennessee, art. 2539.

But, even if Glover were authorized to bring the money from Tennessee to Mississippi, he did not do so. It never was in his hands in the state of Mississippi; never was within the jurisdiction of her courts. It had been received in Tennessee previous to his appointment in Tennessee, and he was liable to account for it to the Tennessee court.

In the case of Smoot v. Bell, 3 Cranch, C. C. 343, very similar in principle to the case at bar, Chief Justice Chase, delivering the opinion of the court, uses this language : "The next question is, whether Mr. Smoot is bound to account to the orphans' court here (in Maryland) for funds which he received in Pennsylvania, under his appointment there under the laws of Pennsylvania, and which he there bound himself to account for in the courts of Pennsylvania. We think he is not bound to account to the orphans' court here for that fund, although, under a mistake of his obligation, he may have given credit for it in his first account in this court. In his second account he is credited with that fund as having been improperly charged with it in his former account. In his third account he is again charged with it by the orphans' court, and is required to pay over the amount to Mr. Bell, from which order Mr. Smoot has appealed to this court. We, therefore, think the sentence of the orphans' court ought to be reversed, with costs."

This case is settled in accordance with well-established principles, regulating the rights and duties of guardians acting under appointment from the courts of different states, and obtaining the possession of funds by virtue of his different appointments. Judge Story, in the Conflict of Laws, says : "The rights and powers of guardians are considered as strictly local, and not as entitling them to exercise any authority over the person or personal property of their wards in other states, upon the same general reasoning and policy which have circumscribed the rights and authorities of executors and administrators." Confl. of Laws, 499 ; 1

Johns. Ch. 153; 1 Gill. & Johns. 332. Again he says: "No foreign guardian can, *virtute officii*, exercise any rights or powers or functions over the movable property of his ward which is situated in a different state or country from that in which he has attained his letters of guardianship. But he must attain new letters of guardianship from the local tribunals authorized to grant the same before he can exercise any rights, powers or functions over the same. Few decisions upon the point are to be found in the English or American authorities, probably because the principle has always been taken to be unquestionable, founded upon the close analogy of the case of foreign executors and administrators." Ib., § 504 *a;* Gist v. Haveland, 36 Miss. 69. See, also, relative to the liability of administrators and executors to account to courts of different states for assets received by them, ib., §§ 514, 514 *a*, 514 *b*.

A person who is administrator of the same estate in different states, and who has received assets under both administrations, cannot be compelled to account for any such effects except in the place where received. Story on Confl. of Laws, § 529 *b*, and cases cited, particularly Aspden v. Nixon, 4 How. (U. S.) 467. These authorities seem to settle conclusively the correctness of the ruling of the probate court relative to the money received by the guardian under his appointment in Tennessee. But, conceding the court to have been wrong on this point, was the guardian liable for interest on the money so received, or on the money received for hire in Mississippi? That he was not accountable for interest has been decided so often in this state that it is only necessary to refer to the cases. Reynolds v. Walker, 29 Miss. 250; Roach v. Jecks, 40 ib. 754; Crump v. Geroch, 40 ib. 765.

The Code of 1857, p. 461, is similar to the provisions of the previous law, and declares, in reference to the accounts of guardians: "And for no balance of money in his hands on such account shall a guardian be charged interest; but the court may direct him to place the same

at interest, taking bond, with security for the payment thereof; or the guardian may consent to take the same at interest, with the approbation of the court."

The last question we wish to consider is the liability of the guardian for hire after June, 1862. Whether he should be liable depends on the question of his ability to have hired the slaves. The proof is clear that he could not. They were entirely worthless, and the court is aware that, from 1862 till the close of the war, slaves, so far from being valuable, were a source, not only of anxiety and annoyance, but of actual loss and expense. On the proof the court below could not have found differently.

SIMRALL, J. :

The questions arise on exceptions taken to the final account of C. C. Glover, guardian of Mary W. Shaw and Margaret F. Shaw. Glover, many years ago, had been appointed guardian for these minors by the county court of Fayette county, Tennessee. After settling sundry accounts with his wards in that court, he removed, with his family, of which his wards were members (he having intermarried with their mother prior to his appointment in Tennessee), to Bolivar county, in this state, in the year 1860. In January, 1861, Glover made application to the probate court of Bolivar county for letters of guardianship, which were granted to him, the order reciting that the minors, being over fourteen years of age, consented thereto in writing, and further reciting that the guardianship applied to the estate of his wards then in Bolivar county, or which may thereafter be removed into the county. The penalty of the bond was in $90,000. Upon filing a transcript of these proceedings in the county court of Fayette county, Tennessee, he was, by an order of that court, permitted to remove the property of his wards to Mississippi, that being then, as recited in the order, the place of their residence.

In December, 1861, Glover made a settlement of his

accounts in the county court, by which he was brought in debt a balance of $14,408 72 to his ward, Mary W. Shaw. At the July term, 1868, the guardian propounded a final settlement of his accounts with Mary W. Shaw, then the wife of J. T. Jefferson.   In the first item he charges himself with $14,408 72, the amount due his ward, as per last settlement, 1st January, 1861.   Pending the trial of exceptions which had been filed by Jefferson and wife, the guardian moved to strike this item from his account, which motion was sustained, and that forms the matter of the first assignment of error.

We are fully committed, as urged by the counsel for appellee, to the principle that an administrator, executor or guardian is confined, in the performance of fiduciary duties, to the jurisdiction of the forum which confers the office, and that, by virtue of an appointment in this state, no right is granted to go beyond its limits, and interfere with assets or property in another state.   Riley v. Moseley, Admr., 44 Miss. 37; Anderson v. Gregg et al., ib. 170. If, however, the executor or administrator has reduced the property here to possession, he may follow it and recover it in another state, grounding his right there upon his possession.   Perhaps it may be otherwise with a guardian who does not, as the executor or administrator, take the title.   Grist v. Forehurd, 36 Miss. 761.   But does that principle have application here?   When Glover removed to this state, he was the personal debtor of his Ward. When he came, it may, with propriety, be said that he brought with him the duty and obligation to pay.   It does not differ from the case of his loaning money in Tennessee, while guardian there, to a person who afterward removed to Bolivar county in this state.   It would hardly be contended that, upon his appointment here, he would not be responsible, in the probate court, to his ward for proper and faithful conduct in respect to the debt.   If, through his negligence, it was lost, by insolvency or otherwise, he would thereby make himself liable.   Bell v. Suddith, 2 Smedes &

Marsh. 533, is to the point that, if Glover had never qualified as guardian, he could be held to account only in a court of equity, but if he qualified, the remedy would be in the probate court.

In Martin v. Stephens, 30 Miss. 160, a guardian, appointed here, collected money in South Carolina. It was held, that, when proceeded against in the probate courts, neither he nor his representatives could make the objection that the fund was collected out of the state.

It appears by the transcripts from Tennessee, that Glover had made settlements in the county court, in which he charged himself with money received from all sources, and also interest on the balances from year to year. Upon the production of copies of his bond, and letters to the county court of Tennessee, he was authorized to remove the property of his wards to this state. In December, 1871, he made a settlement of his accounts in the county court, by which he was brought in debt a sum of $14,408. He did not claim that the money was out on loan, that it had been invested in any form. From charging himself with interest, it is manifest that he was himself using the money and was personally the debtor.

He returned no schedule of property, nor did he propose a settlement, except the one in this record, in 1868. There was testimony, delivered by Glover himself, to the effect that he did not keep and administer separately the funds of his ward, he mixed them and used them indiscriminately with his own. Some he loaned out in Tennessee, before his removal to this state, on notes payable to him as guardian ; some was invested here.

The Code of Tennessee, art. 2513, authorizes the guardian to loan surplus money upon bond, with good and sufficient sureties, to be approved by the county court "at its next session." Evidently the guardian did not deal with the funds according to this statute. In his testimony, he admits that he dealt with it as with his own property, and thereby made himself responsible as personal debtor. The

provisions of the Code of Tennessee, immediately follow-
ing the article quoted, relieves the guardian from personal
liability, if he has put out the money in bond and security
approved by the court, although the debt may turn out
insolvent, if the loss is not imputable to his negligence or
fault.    Head, Admr., v. Whitehead, 41 Miss. 405, as to the
management of the fund, is very similar to this case; there
it was impossible to distinguish the estate from the fiduci-
ary's own means, and he was held personally responsible.
If the guardian had stated an annual account, charging him-
self with the money, surely he would not be heard on final
settlement with his ward, on the facts deposed to by him,
to dispute its correctness.    The final account, as offered to
the court, admitted the indebtedness.    It is a solemn con-
fession that he owed it as a personal debt.    Nor did he
propose to shift his ground, until claim was made for inter-
est and additional hire for slaves.    If it be true that the
wards were minors in 1865, when the guardian turned over
notes to the amount of $33,060, out of which to pay his
wards, that arrangement would not be obligatory upon
them.    And although they might repudiate any credits
realized by them from that source during their minority, yet
any money received by them from these notes after attaining
majority or after marriage, would be a discharge *pro tanto*
of any balance due from the guardian.    The depositions of
Pulliam, the attorney for collection, proves that sundry
payments, proceeds of this paper, were made to the wards
respectively, in 1866, 1867, 1868, both before and after their
marriage.

Is the guardian responsible for interest?   He cannot be
required to pay interest on balances on his accounts, unless
he has consented to take the same at interest, or has loaned
out the money at interest, with consent of the court, or used
it in his own business or otherwise made profit.    Crump v.
Gavock et ux., 40 Miss. 768.    It was proper to charge the
guardian with interest, deducting from the debt, each year,
what the accounts show were expended for maintenance and

education, not, however, to be so computed as to make annual rests and thereby compound the interest. The guardian, was rightfully chargeable with the hire of the slaves for the years 1861 and 1862, but not for the years 1863 and 1864.

These embrace all the objections made by the assignment of errors.

Judgment reversed and cause remanded for further proceedings in accordance with this opinion,