## W. H. GARLAND v. EMILY NORMAN.

1. GUARDIAN AND WARD — FINAL SETTLEMENT — RATE OF INTEREST.— The guardian must account for interest, where he has consented to take the ward's money as borrower; where he has loaned it out with the sanction of the probate court, or without its permission, or has used it in his own business, or has in any way made profit out of it. So, where he has failed to account for the profits and income of the estate, and thereby prevented a profitable investment of such income. Where funds come to the hands of the guardian after the ward had attained her majority, his powers as statutory guardian had ceased, and the principle as to interest would not apply. But where the guardian files his final account as guardian, according to the statute, and, in such account, includes the funds so collected, then the rule relative to interest must obtain as to such funds.

2. SAME — SAME.,— He cannot be permitted to claim that he can account, on this settlement, for the principal, and settle the interest, if liable, in another form. It was in his hands as a trust fund, and the rule applicable to trustees is, if they neglect for a long time to settle their accounts, or to pay over money when they ought to do so, they are liable for the legal rate of interest.

APPEAL from the Chancery Court of Pike County. Hon. E. G. PEYTON, Jr., Chancellor.

At the January term, A. D. 1874, of the chancery court of Pike county, W. H. Garland filed his final account with Emily Norman, of whom he had been appointed guardian by the probate court of Pike county.

Exceptions were filed; and, on the trial of said exceptions, the following agreed state of facts was submitted to the chancellor, to wit: That said Emily Norman was born in the year A. D. 1841, and, in 1859, chose W. H. Garland her guardian, who was duly appointed and qualified as such guardian in that year, and in the same year applied for and obtained a decree of sale of ward's lands, and sold same, on a credit of twelve months, for fifteen hundred dollars, and received the money thereon in the year 1867. Whereupon the court sustained said exceptions, and

referred same with account to the clerk of the court to restate account, with instructions to charge said Garland with interest at the rate of six per cent. on the sum of $1,500 from the time it was received up to the date of each payment, deducting same, and the credits in his account; and when the same was corrected and reported the sum of $703.74 due after deducting credits, the court decreed, on motion of counsel for Emily Norman, that the account as restated be ratified and confirmed, and rendered a decree thereon for the payment of said sum of $703.74 by said Garland in favor of said Emily Norman, and, unless paid in thirty days, execution issue thereon; to which decree of the chancellor, sustaining said exceptions to said final account, and the said final decree thereon, Garland, appellant, at the time excepted, and filed his exceptions embodying the above facts.

The case comes here by appeal from said final decree.

*Cassidy & Stockdale*, for appellant:

1. The only question presented by appellant is, as to the authority of the chancery court to charge Garland with interest under the facts in the case.

(1.) Garland was not liable to pay interest, *even if he had received the money during the existence of his guardianship.*

It is now well settled in this court, that a guardian cannot be charged interest, even on the balance reported by him on his annual accounts, unless, 1st, he agrees to take it at interest, with the approbation of the court; or, 2d, he has been directed by the court to put it out at interest; or, 3d, has employed it in his own business; or, 4th, loaned it to others; or, 5th, has otherwise made profit by it. There was no proof before the court showing either of those five grounds for charging him with interest to exist. Garland was not *prima facie* liable for interest, and the onus was on the exceptor to show his liability, and that was not shown, and does not appear in the record.

This liability upon the proof of either of the above facts, arises from the fact that the guardian is using the money of one labor-

ing under the disability of minority, and the court thus protects the interest of the ward while he is a ward, as a special favorite of the court.

2. The chancery court, in the exercise of the jurisdiction of a court of probate, cannot exercise the remedial power appertaining to its equity jurisdiction. The principle is settled law in this state, and but one case need be cited — Troup v. Rice, 49 Miss., 251.

The *powers* and *duties* of a guardian terminate when the ward attains majority, and it only remains to adjust his accounts as guardian, and, but for the statute, they would stand in the relation of creditor and debtor. The power of the probate court to charge interest is confined to guardians. But, when Garland received this money, he was not guardian. The ward had ceased to be a ward, and the court had no power over him as guardian.

The court of equity might, in the exercise of its power, reach him as a trustee.

It may be said, if a balance had been adjudged in 1867, on his final account, it would have drawn interest. But that arises from the statute, which authorized judgments and decrees to draw interest, and not by virtue of the power of the probate court to charge interest to persons other than guardians.

*Harris & George*, for appellee :

Emily Norman, the appellee, arrived at age in the year 1862, and the powers and duties of Garland, her guardian, ceased at that time. See Code of 1857, page 462. The appellant received $1,500 for her, long after his powers ceased as guardian, and he should now be held as trustee for her, and to a strict accountability.

Having voluntarily submitted himself to the jurisdiction of the court, it is but right that the court should retain the case until full justice is done in the premises. He sold her property while he was her legal guardian, collected the proceeds of the sale some five years after his powers ceased as guardian, and retained the whole

amount for 15 months, and then pays $150, again retains for 27 months and pays $250, and retains the balance for 4 years and 5 months, and pays $700, making in all $1,100 of the $1,500.

After he ceased to be guardian, the court had jurisdiction over him to compel him to render his account, but the court could no longer govern him as to the fund in his hands, except in the final account to decree payment or delivery. As a trustee for the guardian's ward, the case presents misapplication or conversion of the fund. In the court, he brought forward the whole matter in order to be discharged, and the court might fairly treat the case as one outside of the general rule as to funds in the hands of acting guardians.

It is plain that interest was demandable; for his failure to pay over the money was a breach of trust, as his ward was of age. The guardian, whilst the ward is under age, cannot pay over the money, and must therefore look to the court for directions. Here the guardianship had terminated. As a trustee, the rule requires him to pay the legal rate of interest, at least. See, on the subject of trustees retaining funds contrary to duty: Perry on Trusts, p. 428, § 468.

But is he not bound to pay interest as on loaned money? It devolves on him to show that he did not realize more than the regular rate of interest on loaned money, and ·this is insisted on in the cross appeal.

It is certainly unreasonable to hold that a trustee may retain against the law which requires him to pay over this money to his ward on his arrival at age, and rule the ward down to 6 per cent. interest. It is like the case of refusal to invest when investment is ordered. This is not the case of misconduct merely in management. It is a default made for the trustee's private advantage. There was no report made to the court of the balances of money. There could be no action of the court in regard to it, and the rule in Johnson v. Miller, 33 Miss., 553, and Reynolds v. Walker, 29

Miss., 250. The relations of guardian to the court were severed by the ward's arrival at majority.

It was, however, in the power of the court, in fixing the amount due, to decree interest on the general principles of just dealing. The statute as to interest was not designed to apply to such a case.

The rule laid down by this court in Powell v. Cooper, 42 Miss., 221, should govern this case. It was the duty of the court to charge the highest rate of interest.

SIMRALL, J., delivered the opinion of the court.

Garland complains of the decree of the chancery court, because he was charged interest on the funds of his ward, at six per cent. from the time the money was received by him.

Emily Norman, on her cross appeal, alleges that she is prejudiced by the decree, because it does not charge Garland with a high enough rate of interest.

In 1859 Emily Norman being then eighteen years of age, selected Garland for her guardian, who was duly appointed and qualified. In the same year Garland, under the order of the probate court, sold the real estate of his ward on a credit of twelve months for $1,500. The money was collected by Garland in 1867.

The chancery court, by decretal order, directed the account to be settled on the basis of charging Garland interest at six per cent. up to each payment, a credit, then deduct such credit, etc. The final decree was made accordingly.

Both parties are dissatisfied with the decree and have appealed.

Prior to the decision of Reynolds v. Walker, 29 Miss. Rep., 262, there had been conflict in the cases as to the circumstances under which a guardian was chargeable with interest. In that cause the authorities were reviewed, and the court returned to the doctrine laid down in Hendricks v. Huddleston, 5 S. & M., 422, and Austin v. Dean, 23 Miss., 189, and announced these principles: The guardian must account for interest, where he has

consented to take the ward's money as a borrower, where he has loaned it out with the sanction of the probate court or.without its permission, or has used it in his own business, or has in any way made profit out of it.  So where he has failed to account for the profits and income of the estate, and thereby prevented a profitable investment of such income.  These principles were reaffirmed in Roach v. Jelks, 40 Miss. Rep., 756, and Crump v. Gerock, ib., 768, and Coffin v. Bramlitt, 42 Miss., 208.

But the ward had obtained her majority several years before Garland collected the fund.  The powers and duties of a guardian terminate and cease when the ward attains majority, and he shall forthwith deliver all property to the ward, and shall also make a final settlement with his ward.  Code, 1857, art. 148, p. 462.

When the money was received by Garland in 1867, his powers and duties as statutory guardian had ceased; the principles, therefore, which apply in reference to interest upon funds in his hands, whilst his powers as guardian were in existence, do not apply in this case.

He, however, filed, as required by the statute, his final settlement, and included in it the fund in controversy, deducting from it sundry credits and payments made for Emily Norman. He voluntarily submitted to the court the adjustment of a proper balance on account of this money.  If he accounts for it at all in this proceeding and in the chancery court, it must be according to those rules which apply to the accounting.  He cannot be permitted to claim that he can account on this settlement for the principal, but if he is liable for interest, that must be determined in another forum.  He ought to have paid over this money so soon as he received it.  It was in his hands a trust fund.  The rule applicable to trustees is, if they neglect for a long time to settle their accounts or to pay over money when they ought to do so, they are liable for the legal rate of interest.  Perry on Trusts, § 468, and cases in note 2.

We think that justice has been done by the chancellor, and affirm his decree.