SIDONIA BAUM v. SAMUEL GREENWALD.

[49 South. 836.]

1. LUNATICS AND LUNACY. *Inquisitions. Jurisdiction. Statutory proceedings. Parties. Code* 1906, § 3219.

A proceeding under Code 1906, § 3219, giving the chancery court jurisdiction of writs of lunacy to be exercised at any time—in vacation by the clerk subject to the approval of the court—is one:—

(*a*) Whereby dangerous or indigent lunatics may be confined in an asylum, or if need be temporarily in jail, for protection of themselves, or for the safety of others; and

(*b*) May be instituted by any relative of the alleged lunatic or, in case they fail to act in the premises, by any citizen; and

(*c*) The jury may order the defendant confined if the evidence

strongly tends to show that he is subject to criminal and dangerous tendencies, although it be doubtful whether he be sane or insane.

2. SAME. *Same. Guardianship. Evidence. Costs. Code* 1906, § 2430.

A proceeding under Code. 1906, § 2430, authorizing the chancery court to appoint a guardian to insane persons:—

(*a*) Can be initiated only by some person interested, either as a public officer or as a relative or friend of the alleged lunatic; and

(*b*) May be begun either before the chancery court or the clerk in vacation; and

(*c*) If begun before the clerk the jury must report its findings to him, he must enter a decree in accordance therewith and make due return to the court at its next term for approval or disapproval, and he is without power to vacate the verdict or grant a new trial; and

(*d*). It is unnecessary for the clerk to have the testimony reduced to writing, but if the same be done, it becomes a part of the proceeding and may be considered by the court on an application to approve; and

(*e*) Where the evidence is not preserved and no objection is made to the confirmation of the proceedings before the clerk approval by the court will follow on motion as a matter of course, but if objection be made the court must examine all that was done by the clerk as shown by the record and hear evidence in favor of and against approval; and

(*f*) In case the evidence fails to establish the lunacy of the person, all the costs of the proceeding should be taxed against the party who instituted it.

FROM the chancery court of Lauderdale county.

HON. JAMES L. McCASKILL, Chancellor.

Greenwald, appellee, was complainant in the court below; Mrs. Baum, appellant, was defendant there. From a decree appointing a guardian of her estate the defendant appealed to the supreme court and the complainant and one McRaven prosecuted a cross-appeal. The facts are fully stated in the opinion of the court.

*Witherspoon & Witherspoon,* for appellant.

*G. Q. Hall, Hall & Jacobson* and *J. M. McBeath,* for appellee and cross-appellant Greenwald.

*Amis & Dunn,* for McRaven, a cross-appellant.

[The briefs of counsel in this case were all lost from the record when it reached the reporter.]

MAYES, J., delivered the opinion of the court.

On the 7th day of February, 1908, Samuel Greenwald, the brother of Mrs. Sidonia Baum, proceeding before the chancery clerk in vacation and under section 2430 of the Code of 1906, filed an application, in which it was alleged that his sister was of unsound mind, and prayed for the issuance of a writ *de lunatico inquirendo* for the purpose of having her sanity inquired into, and further prayed that the clerk appoint a guardian for her person and estate. This proceeding was instituted for the sole purpose of procuring the appointment of a guardian for the purpose above stated, as it was instituted under the section above cited, exclusively dealing with the procedure to be followed with reference to guardian and ward as affecting persons of unsound mind, and it appears, from the proceedings and otherwise, that Mrs. Sidonia Baum had inherited from her stepfather quite a considerable estate. In due course the clerk issued an order, directed to the sheriff, as required by section 3219 of the Code of 1906, requiring him to summon the alleged lunatic to contest the application, and also to summon six freeholders to make inquiry as to the sanity of Mrs. Baum, and to return the result of the inquisition to the clerk. This order seems to have been duly executed on all parties, and was made returnable on the 12th of the same month. The inquisition was not held on the return day, but continued from time to time by the clerk, who seems to have constituted himself a trial judge in this proceeding and conducted the cause as if it was a trial in the circuit court, until the 18th day of February, when the inquisition began before the jury so summoned and was protracted for several weeks. The cause finally resulted in a finding by the jury that Mrs. Baum was of unsound mind, and the clerk appointed a guardian for both her person and

estate. Throughout all this long contest the parties had supplied themselves with a stenographer and all the testimony was taken down, and at the conclusion of the trial before the clerk there was a motion for a new trial, which was overruled by the clerk, and a bill of exceptions on the part of Mrs. Baum tendered and signed, embodying all the evidence as shown by the stenographer's notes.

At the succeeding term of the chancery court, among other vacation acts which came on for approval by the court, a motion was made to approve the action of the clerk in adjudging Mrs. Baum to be of unsound mind and appointing a guardian for her person and estate. Objection was duly made to this by counsel for Mrs. Baum, and in support of this objection the whole proceeding had by the clerk was offered in proof by the counsel for Mrs. Baum, which included all the testimony taken before the jury under the direction of the clerk. This was objected to by counsel for the petitioner; but the objection was overruled by the chancellor, and all that the clerk did, or permitted to be done, as shown in the proceedings, was reviewed by the chancellor, and resulted in a decree setting aside the action of the clerk in so far as the appointment of a guardian for the person of Mrs. Baum was concerned, but approving the act of the clerk in appointing a guardian for the estate of Mrs. Baum, and taxing one-half the cost of the proceeding against the estate of Mrs. Baum and the other half of the cost was taxed against Samuel Greenwald, the petitioner. From this decree Mrs. Baum appeals generally, and there is a cross-appeal by Samuel Greenwald from that part of the decree which taxes him with one-half of the cost, and also an appeal by McRaven from the decree of the chancellor removing him as guardian and appointing W. D. Cameron.

It will not be necessary to notice the appeal of McRaven in any way, since his rights are necessarily determined under the decision. A large number of witnesses were introduced by the parties on both sides, and the stenographic notes comprise over

1,100 pages. It would therefore be practically impossible, as well as unnecessary, to give in detail or in substance the testimony of these various witnesses relating to the sanity or insanity of Mrs. Baum. We shall first deal with the legal questions involved and then with our conclusions on the facts.

The two sections of the Code involved are 3219 and 2430. Section 3219 deals with the general subject of lunacy, and provides the procedure to be pursued when the sanity of any person is sought to be inquired into, whether the proceeding is instituted under section 2430, for the purpose of procuring the appointment of a guardian alone, or whether under section 3219, for the general purpose of having the party declared insane and confined, as directed by sections 3220 and 3221. While the main object of section 2430 is for the purpose of having a guardian appointed for the person adjudged to be of unsound mind, the incidental power is given in that section to have the ward confined in the insane hospital also, if the exigencies of the situation so require; but that is not its principal object. Section 3219 is intended as a summary police regulation, whereby dangerous or indigent lunatics or insane persons may be cared for or confined, for protection to themselves or for the safety of the public, as the case may be. This summary power is confined by section 3219 to the chancery courts, to be exercised by the clerks at any time, subject to the approval of the court always. In other words, where the proceeding is under section 3219 solely, being a summary police regulation, the jurisdiction to issue the writ of lunacy and summon a jury to inquire as to the sanity of a party must be initiated before the clerk, and his acts subsequently reviewed and set aside or approved by the court, and where the proceeding is under the above section it may be initiated by any relative; but if no relative or friend initiate the proceeding, either refusing or neglecting so to do, then the proceeding may be initiated by any citizen, on conforming to the requirements of the statute. Thus it is seen that when the proceeding is solely under section

3219, which is a summary police regulation, the proceedings may be initiated by any citizen, if no relative or friend acts, and it must be initiated before the clerk, subject to the approval of the court afterwards.

There are many differences between section 3219 and that section which has to do with the proceedings where the object sought is merely the appointment of a guardian; the latter being section 2430 of the Code, which is the section under which these proceedings are initiated. Thus, where a person shall have been adjudged to be of unsound mind, the chancery court upon its own motion, or upon the application of a relative or friend, or of a member of the board of supervisors, may appoint a guardian for such person. But if the person have not been adjudged to be of unsound mind, and the object of having the person declared to be insane be for the purpose of having a guardian appointed, then the writ may issue for this purpose only, upon the application of a relative or friend, or of a member of the board of supervisors. In other words, where the proceeding is under section 2430, it can be initiated only by some person interested, either as a public officer, or as a relative or friend; whereas, under section 3219, intended as a summary and protective police regulation, the proceeding can be initiated by any one of the public on failure of the relative or friend to act.

A discussion of these two sections of the Code in this connection becomes important, because evidence which would be sufficient to warrant a jury in declaring a person of unsound mind where the proceeding is under section 3219 might be wholly insufficient under section 2430; the former section being in the nature of a police regulation, designed for the protection of the public and of the insane person, and the latter section designed solely for the purpose of protecting the estate and person of the insane person himself. In other words, where the proceeding is under section 3219, and the evidence should leave it doubtful as to the sanity or insanity of the person inquired

of, and should also tend strongly to show that the subject of the inquiry was possessed of criminal and dangerous tendencies, the jury might be well warranted in solving that doubt in favor of the protection of the community and order such person confined. But where the proceeding is a purely civil one, under section 2430, and instituted for the sole purpose of protecting the estate and person of the subject of the inquiry by the appointment of a guardian, no person's property or liberty of action should be interfered with, except upon the clearest and most indisputable proof of unsoundness of mind and inability to care either for themselves or their property. Man's unrestricted right to deal with his own in any way he may choose so long as he violates no law, and the right to his freedom so long as his mind is in such a state as that he menaces no individual, is one of the most valuable and sacred guaranties of the law.

Another distinction between these two sections, clearly indicating that it was the object of section 3219 to be a summary police regulation, is that, where the proceeding is initiated under section 2430, it may be commenced before the chancery court, or the clerk; whereas, under section 3219, it must be initiated before the clerk. If the jury adjudge the person to be of unsound mind, or if they find to the contrary, it is the jury's duty to report the result of their inquiry to the clerk, and it is then the duty of the clerk to enter on his minutes the finding of the jury, and such decree as necessarily results from that finding, and report the same to the chancery court at its next setting for approval or rejection, as the case may be. The clerk has no power to set aside the verdict of the jury in any such case, or to enter any decree other than that in accordance with the finding of the jury as directed in sections 3220 and 3221 of the Code of 1906. If the person be adjudged of unsound mind and have an estate, or there be other necessity for the appointment of a guardian, the appointment of guardian on proper application follows as a matter of course.

It was not at all necessary for any of the testimony taken before the jury on the trial to be reduced to writing; but, since such testimony was taken, it constitutes a part of the proceedings and may be read and considered by the chancellor when the matter comes up on motion for approval. The whole matter is under the supervision of the chancellor, both the action of the clerk and that of the jury, and the finding of the jury and decree of the clerk thereon does not become final until approved by the court. If no evidence was preserved, and there is no objection entered to the confirmation of the proceedings, the decree is confirmed as a matter of course, on motion of the clerk; but, if objection is entered, then the court will examine all that has been done, as shown in the record of the proceedings returned by the clerk, giving such weight to these things as the court may deem proper, and hearing any and all other evidence which the party objecting may offer as a reason why the proceedings should be set aside, and as correlated to this will bear any evidence which may be offered as a reason why the clerk's acts should be approved. The statute expressly makes these powers exercised by the clerk subject to the approval of the court, and it necessarily follows that the court can set aside the verdict of a jury when the finding is that the person is of unsound mind, if upon a full hearing and on objection the court be of the opinion that the facts do not warrant the finding. Only a jury of six freeholders can declare a person to be of unsound mind; but their verdict is not final, and the court, which must approve their finding before it becomes final, can set aside their findings and discharge the person so adjudged.

The facts of this case wholly fail to show that Mrs. Baum is of that unsoundness of mind that would warrant the appointment of a guardian either for her estate or person. We have read this record with great care, and unanimously conclude that the evidence wholly fails to show such a case as would authorize the appointment of a guardian. Her estate should

be given to her as unrestrictedly as she was removed from physical restraint, and we dare assert that this grief-stricken woman, who has shown enough business ability to earn the daily bread of her bedridden husband, while in the city of New York, during his lifetime, while tenderly ministering to his daily wants as cook and nurse, in addition to keeping want from the door, will evince business ability sufficient to care for and preserve her person and property from suffering and from waste. If we be incorrect in this, still, under the facts as they appear in this record, neither this court nor any other court has any power under the law to interfere with her.

While the clerk excluded much testimony, we try this case on the record as it comes from the chancellor, and on that record the case should be reversed on its facts. It follows, on direct appeal, that the decree of the chancellor, approving the act of the clerk in so far as the appointment of a guardian for the estate of Mrs. Baum is concerned, was error, and should be reversed. It also follows that the chancellor should not have taxed any part of the cost against the estate of Mrs. Baum, and this action of the chancellor is also reversed.

On cross-appeal, the only error we find is the failure to tax the whole of the properly taxable costs of the proceeding in the court below against cross-appellant, Samuel Greenwald, and that part of the decree is here modified, so as to tax the whole of such costs in the court below against Samuel Greenwald, the cross-appellant. Also a decree is here entered reversing the case and dismissing the entire proceedings, and taxing all costs of appeal against Samuel Greenwald, appellee.

*So ordered.*

SMITH, J., delivered the following specially concurring opinion.

Admitting that the testimony introduced before the jury, which was impaneled by the clerk, was properly before the chancellor, I am in full accord with the opinion of the majority

of thé court; but I very seriously doubt whether the chancellor had before him any legal evidence bearing on this matter at all. I am not prepared to admit that the statute under which this proceeding was instituted authorizes the preservation of any testimony heard by the jury by means of a bill of exception, or that the clerk can make it a part of the record by reducing it to writing and approving and filing same. Neither am I prepared to admit that, when reduced to writing, the law authorizes its introduction as original evidence before the chancellor.