COHN v. WINSLOW.

[76 South. 246, Division A.]

GUARDIAN AND WARD. *Loss of money by guardian. Liability of surety.*
Under Laws 1914, chapter 201, providing that when the chancellor
designates the person to whom the money of the ward shall
be loaned and the loan is so made, responsibility shall not
thereafter attach to the guardian, where pursuant to an order
of the chancellor permitting the guardian to place a sum of
money in a named bank or other safe bank and providing that
the "court does not relieve" the guardian or his bondsmen the
guardian deposited the money of his ward in the named bank.
In such case his sureties on his bond were not liable for loss of
the ward's money due to the failure of the bank, the court hav-
ing no power to add to their liability under the statute without
their consent.

APPEAL from the chancery court of Lincoln county.

HON. O. B. TAYLOR, Chancellor.

The matter of the guardianship of Lenora J. Wins-
low, a minor, from an order of the chancellor holding
Louis Cohn surety on the guardian's bond liable for loss
of the minor's money, he appeals.

L. H. Baggett was appointed by the chancery court of
Lincoln county guardian of the estate of the appellee, a
minor, and executed bond with appellant, Cohn, and one
Becker as sureties on his guardian's bond. The guardian
received two thousand, five hundred dollars of the ward's
money, and reported the collection of same to the chan-
cery court, and petitioned to be allowed to place the
money in the Commercial Bank & Trust Company of
Brookhaven, or in some other safe bank at the discretion
of the guardian. The court granted the prayer, render-
ing the following decree:

"This cause this day came on for hearing on petition of
L. H. Baggett, guardian, for permission to place the
amount of money now in his hands as guardian, which is

two thousand, five hundred dollars, with the Commercial Bank & Trust Company, or some other safe bank in th discretion of the guardian at five per cent. per annum, and the court, having heard same, doth order, adjudge, and decree that L. H. Baggett, guardian of Lenora J. Winslow is hereby permitted to place said sum of money with the Commercial Bank & Trust Company or some other safe bank, at the discretion of the guardian, at the rate of five per cent. per annum. In granting this order the court does not relieve L. H. Baggett and his bondsmen from liability to Lenora J. Winslow for the safety of said money."

Some months later this bank failed, and afterwards, when the guardian presented his first annual accoun' reporting the collection of a portion of the amount so deposited or loaned to said bank, and asked credit for the amount uncollected by reason of the failure of the said bank, because it had been loaned by him as guardian under specific directions of the court, the ward, through her attorney, contested the account, insisting that the sureties on the guardian's bond should be held liable for the amount of the ward's money lost by reason of the failure of the bank, because of the fact that Baggett, the guardian, was assistant cashier of the said bank, and Becker was cashier and Cohn one of the sureties, was a director in the said bank, and at the time the loan was made it was understood and so ordered by the decree of the chancery court that the sureties should not be relieved from liability to said minor for the safety of the money so loaned. On the trial it was agreed that the loan was made by the guardian as a permanent investment, and not as a temporary deposit, and that the guardian made no further effort to invest the money. Baggett and Becker were shown to be insolvent, and the court held Cohn liable for the loss of the money of the minor, and from an adverse decree he appeals.

*Luther J. Tyler, R. H. & J. H. Thompson* and *Fulton Thompson,* for appellant.

It has been established in Mississippi, certainly since the decision of the case of *Coffin v. Bramlett,* 42 Miss. 194, that so long as a guardian keeps himself strictly within the line of duty and exercises reasonable care and diligence, he cannot be held responsible for any loss of or depreciation in the funds entrusted to him.

Under Mississippi Code 1906, section 2416, Mississippi Code 1892, section 2200 it is the duty of a guardian, having in hand money of his ward not needed for current expenditures, or not directed to be invested, to apply to the court or chancellor in vacation for directions as to the disposition he shall make of it. Upon such application the court or chancellor is required to determine whether the guardian shall lend it at interest and upon what security or how he shall dispose of it; and the statute expressly provides that if the court or chancellor designate the person to whom the loan shall be made, or the security on which it shall be made, and the loan be so made, responsibility shall not attach thereafter to the guardian. In this case Baggett, the guardian, applied to the court, under the provisions of the statute, and obtained the decree hereinbefore quoted.

We submit two propositions to the court. The determination of either of them in appellant's favor will require a reversal of the decree from which the appeal is prosecuted and will put an end to this case.

First: The decree under which the money was invested with the Commercial Bank & Trust Company expressly authorizes and empowers the guardian to so invest the money. Its words are that Baggett, the guardian "is hereby permitted to place the sum of money (meaning the twenty-five hundred dollars) with the Commercial Bank & Trust Company." It is an exact compliance with the statute, Mississippi Code, section 2416.

The appellee, however, will claim that additional words incorporated in the decree take the case out of the statute but in this we think the appellee is mistaken. It is true the decree empowered the guardian to make other deposits of the funds at his discretion. It fixed the rate of interest at which the money was to be loaned at five per cent. The concluding clause of the decree in these words: "In granting this order the court does not relieve L. F. Baggett and his bondsmen from liability to Lenora J. Winslow for the safety of said money," can have no reference to a loan made to the Commercial Bank & Trust Company. It applies only to a loan made to some other person, and the guardian was left with the discretion to loan it to some other person if he thought proper.

To construe the words quoted from the decree, as applying to a loan to the Commercial Bank would make them nullify the statute, and a construction of a decree which nullifies a statute should never be made. It is due to the good sense and legal learning of the trial court that the judge thereof should be credited with a knowledge that a decree of the court cannot change the statute and impose liability where the statute exempts from liability.

Second. Even though the decree be construed in the way in which the appellee seeks to construe it, Baggett, the guardian is not liable for the loss which resulted from the loan to the Commercial Bank & Trust Company because he is not shown to have exercised faulty discretion or to have failed to exercise reasonable care and diligence in and about the making of the loan. While he was assistant cashier of the bank he believed it perfectly solvent at the time he made the loan to it. He had no reason then and no reason afterwards to suspect its insolvency or to apprehend that it would go out of business until after eight-thirty o'clock on the morning on which the assignment was made.

We earnestly contend that the record wholly fails to show that he did not use ordinary care and diligence in making the investment in question or that he was not actuated by good motives. If either proposition be true, he is not personally chargeable with the loss, nor can the sureties on his bond be held liable.

We ask a reversal of the decree appealed from and that this court adjudged that the guardian should be credited on his account with the amount of the loss which resulted from the loan to the Commercial Bank & Trust Company of Brookhaven, Mississippi.

*H. V. Wall,* for appellee.

Section 2416 of the Code of 1906, directs what should be done where a guardian has in his possession surplus money or property of his ward. Said section reads as follows:

"Whenever the guardian shall have money of his ward not needed for current expenditures, or directed to be invested for the ward, he shall apply to the court, or chancellor in vacation, for directions as to the disposition he shall make of it; and the court or chancellor shall determine whether he shall lend it at interest and upon what security, or how he shall dispose of it; and if the court or chancellor designates the person to whom the loan shall be made, or the security on which it shall be made, and the loan be so made, responsibility shall not thereafter attach to the guardian; but if the court or chancellor shall intrust him with discretion in the matter, he shall be bound for the exercise of sound judgment, and the court or chancellor may direct an investment in the bonds of the state or of the county or municipality thereof, or of a levee board, or of the United States. Any guardian who fails to report to the court the fact that he has money of his ward not needed or allowed to be used for current expenditures, and to ask the order of the court as to the disposition of such

money, shall be chargeable with interest on the same, at the rate of ten per cent per annum during the time of failure.''

Where a guardian has surplus money in his hands he must have an order of the court before he can invest it, or he and his bondsmen shall be liable in case of loss. See 21 Cyc., page 88, and *Davis* v. *Harris,* 13 Smedes & Marshall, page 9.

We call the court's attention to the wording of the order in which the court directs upon what conditions the money shall be loaned to the Commercial Bank & Trust Company. The order distinctly says that it shall be put there with the distinct understanding that neither the guardian nor his bondsmen are relieved. We call the court's especial attention to the wording of the petition of the guardian for an order of the court in which the guardian plainly sets out that he does not ask to be relieved, or to have his bondsmen relieved from liability to the ward if the court directs the money to be placed with the Commercial Bank & Trust Company. Therefore the court will note that the chancellor ordered the money loaned as a permanent investment to the Commercial Bank & Trust Company, and direct what security the guardian should take. That is, that the guardian should be personally liable and that his bondsmen should be personally liable if the loan was made to the Commercial Bank & Trust Company. We call the court's attention to the provisions of section 2416 of the Code of 1906, wherein it states, ''that the court or chancellor shall determine whether the guardian shall loan at interest the money in his hands and upon what security;'' and said section further provides that the guardian shall follow the order of the court and shall make the loan in accordance with the order. In the case at bar we submit that if the guardian made the loan to the bank according to the order of the court both the guardian and his bondsmen are liable.

We call the court's attention to the case of *Corcoran* v. *Kostrometoniff*, 21 L. R. A. (N. S.) 399. Justice GIL- BERT in the above styled cause lays down this to be the rule. "While the effect of an order of the court author- izing the loan or investment is to protect the guardian so far as he proceeds in compliance therewith, there can be no doubt that, in order to avail himself of such protection he must obtain the order in the manner pointed out by the statute, if there be a statute, relating to the proce- dure." And said case further holds that where the order is obtained it must be followed, or else the guard- ian acts without an order. See also 55 Am. St. Rep. 904.

The making of a loan by a guardian without security is a breach of his official duty, and he and his bondsmen become liable to the ward (see 21 Cyc., page 91). *Lee* v. *Lee*, 55 Ala. 590; *Harbin* v. *Bell*, 54 Ala. 389; *But- terick* v. *Heft*, 21 Am. Dec. 374.

We call the court's attention to the case of *Real Es- tate and Guardianship of Bennett Wood*, 159 Cal. 466, 36 L. R. A. (N. S.) 252.

If the guardian under the law is liable, then the ap- pellant is liable. See *Bell* v. *Rudolph*, 12 So. 153, where our court holds that the bondsmen are liable where the ward's funds are lost.

Counsel in their brief argue at length the question of "good faith" and the question of "faulty discretion" and the question of the "exercise of reasonable care and diligence." These questions, in our judgment, have nothing on earth to do with a decision of this case. This case must stand or fall upon the petition of the guard- ian and the order of the court. The questions of rea- sonable care and faulty judgment are not the issues in this case, because it is our contention and the authori- ties above cited so hold, that the guardian was compelled to obtain an order of the court before he could loan the money in his hands. The question of getting an or- der was not discretionary with the guardian, but it was absolutely necessary. Then if he obtained an order it was

absolutely necessary for him to follow the order, and the question of "good faith," "sound judgment," etc., could not in any way enter into his transaction. Then if he relied upon the order of the court he must follow the order, and if he does not follow the order then he and his bondsmen are liable, and this is true, regardless of the good faith, bad or good judgment, or any other consideration.

Smith, C. J., delivered the opinion of the court:

Section 2416, Code of 1906, as amended by chapter 201, Laws of 1914, prescribes the measure of liability that attaches to a guardian, and consequently to his sureties, for loans made by the guardian pursuant to an order of the chancellor, and the chancellor, without the consent of the sureties, is without power to add to the liabilty there fixed upon them, and in the case at bar, while the guardian may have agreed to remain liable for the safety of the money to be loaned in accordance with the chancellor's order, the sureties did not; and, since the guardian obeyed this order and the statute in making this loan, his sureties are not responsible for any loss of the ward's money that may result by reason thereof.

*Reversed and remanded.*