PAN-AMERICAN LIFE INS. CO. *et al. v.* CRYMES.

(In Banc. April 2, 1934. Suggestion of Error Overruled April 23, 1934.)

[153 So. 803. No. 30972.]

Reily & Parker and Nate S. Williamson, all of Meridian, for appellants.

J. H. Currie, J. C. Floyd, and Thos. L. Bailey, all of
Meridian, for appellant, Pan-American Life Ins. Co.

**Gilbert & Cameron,** of Meridian, for appellant, Bob Wall.

S. M. Graham, of Meridian, **D. G. Fountain** and **R. R. Dinsmore**, both of Jackson, for appellee.

Argued orally by **J. H. Currie, J. C. Floyd** and **V. W. Gilbert**, for appellant, and by **S. M. Graham**, for appellee.

**Per Curiam:**—On June 9, 1922, J. D. Crymes, Sr., presented a petition in the chancery court of Lauderdale county averring that his son, J. D. Crymes, Jr., was at that time an adult of the age of twenty-three years, and was a resident citizen of said county, but that because of injuries suffered by said J. D. Crymes, Jr., during the World War and while in the service of the United States Navy, he had become a victim of some mental disease, was incapable of attending to his own affairs, and that he was then in the government hospital in Augusta, Georgia. The petition further averred that certain sums of money estimated at about one thousand dollars were due to J. D. Crymes, Jr., by the United States government, but which would be paid over only to a guardian, and petitioner prayed for letters of guardianship. The petition

was granted, the letters were issued, and the guardian made an approved bond in the sum of one thousand dollars.

On December 4, 1922, the guardian filed his inventory showing that he had collected for his ward, one thousand two hundred dollars and forty-one cents. On the same day the guardian filed his petition stating that he had in his hands the sum mentioned and praying that the guardian, as an individual, be allowed to borrow the said money from himself as guardian on the security of certain real estate owned by the guardian as an individual, the petition describing the property and showing that it was ample in value to safely protect the loan. A decree was entered by the court sustaining the petition, and thereafter on January 4, 1923, a deed of trust was executed by Crymes, Sr., as an individual to himself as guardian to secure the loan aforesaid, the trust deed being duly recorded.

On November 19, 1923, the guardian filed another petition averring that he then had in his hands the further sum of one thousand thirty-two dollars and forty-one cents, and prayed that he be allowed to borrow also that sum from himself and to give as security therefor a second deed of trust on the same property. This petition was granted by the court, the second deed of trust was executed on November 22, 1923, but was not filed for record until July 25, 1924. On November 23, 1923, an order was made requiring a guardian's bond in the sum of four thousand dollars, and this bond was filed and approved on December 20, 1923.

On June 4, 1925, the guardian filed his first annual account showing collections of about two thousand dollars in addition to the two amounts hereinabove mentioned, and on the same day the guardian presented his third petition for the borrowing of the funds by himself as an individual from himself as guardian, and on the security of the same real estate, and the petition prayed further that the two previous loans be combined with

the third loan, which would make the total amount four thousand one hundred thirty-three dollars and seventy-four cents; that one deed of trust be accepted for the entire amount; and that thereupon the two previous deeds of trust be canceled. The prayer of this petition was also granted by the court, the third deed of trust was duly executed and recorded, and thereafter on June 30, 1925, the two previous deeds of trust were canceled on the records by the respective trustees therein, attested in statutory form by the clerk. On the day that the first annual account was filed, and on which the third loan was allowed, a new bond in the sum of five thousand dollars was ordered and was approved and filed.

On June 10, 1925, a few days after the third loan transaction next above mentioned, the guardian petitioned the court for an order of release of a portion of the property from the deed of trust, it being represented that the portion sought to be released was worth about six hundred dollars and that the remainder would be ample security for the total loan, and, on October 19, 1929, the guardian petitioned for the release of an additional portion of the property averring that the remainder would be adequate security. Both these petitions were allowed by the court, the releases were ordered, the guardian sold the property so released, and one of the defendants, the Pan-American Life Insurance Company, has become the purchaser by mesne conveyance of the larger and more valuable portion of said real estate so ordered released.

The guardian continued to collect and receive money for his ward, the total amount collected by him from the government and other sources being five thousand four hundred seventy dollars and seventy-three cents without interest, against which the guardian paid out for and to his ward only about nine hundred dollars. These collections so continued down to the end of the year 1930. Thereafter the guardian died, leaving a wholly insolvent estate. A successor guardian was appointed

who exhibited the bill now before us which, with the amendments and supplements and numerous exhibits, set forth the facts above stated and many others in detail, out of which we are making reference only to those which will present the legal questions which we have been called upon by this appeal to decide. The bills and exhibits disclose that the land not released and not sold is insufficient by far as security for the balance due the ward; that the third bond has become insolvent; and that it is necessary to resort to the first and second bonds. The sureties on all the bonds and all others necessary have been made parties.

1. The first question to be decided is whether the guardianship proceedings throughout are void. The petition for the appointment did not aver that J. D. Crymes, Jr., had been adjudged a lunatic under a writ de lunatico inquirendo, nor did it aver that the government hospital in Augusta, Georgia, was an asylum for the insane. The facts now shown by this record and admitted by all parties are that, although mentally incompetent, he has never at any time or anywhere been legally adjudged a lunatic; but it is admitted also that the hospital mentioned is an institution where insane soldiers and sailors are confined and treated. Section 1896, Code 1930, reads as follows: "The chancery court of any county in which may be situated the property or any part thereof, or debt due to, or right of action of any person who may be adjudicated to be a lunatic by proper proceedings in another state; or of a citizen of this state of unsound mind who may be confined out of this state in an asylum for the insane, shall have jurisdiction to appoint a guardian of the estate of such lunatic, or person of unsound mind."

The majority of the court, without expressing any opinion, deeming it unnecessary, as to what would be the result had Crymes been all the while in this state, has concluded that the appointment in this case is supported by and under the last clause of the quoted statute

and that the guardianship proceedings are not and were not void.

2. The second question is whether the orders of the court allowing the guardian as an individual to borrow the funds from himself as guardian are void, the facts appearing on the face of the record was challenged; the basis of the challenge being the general principle of law that no guardian or other fiduciary shall ever be allowed to have such relation to the trust estate as will bring his personal interests into definite conflict with his duty as trustee. Section 1885, Code 1930, provides that "whenever the guardian shall have the money of his ward not needed for current expenditures, . . . he shall apply to the court . . . for direction as to the disposition he shall make of it; and the court or chancellor shall determine whether he shall lend it at interest, and upon what security, or how he shall dispose of it; and if the court or chancellor designate the person to whom the loan shall be made, or the security on which it shall be made, and the loan to be so made, responsibility shall not attach thereafter to the guardian." While expressing no opinion upon the wisdom or propriety of an order for the loan of the ward's funds to the guardian himself, the majority of the court is of the opinion that the language of the statute is broad enough to include the guardian, and that since the Legislature did not by express words exclude him, it is not proper for this court to exclude him by construction. The vote of the majority is that these orders are not void on their face.

3. The third question is whether the orders aforesaid are void for fraud in their procurement, or because of the circumstances under which made. The bills allege and the demurrers admit that when the guardian applied to the court praying these several orders allowing him to borrow the money in his hands, the guardian did not in fact at said times have the funds in his hands, but that he had already converted them to his own use; in

other words, that the petitions presented were not in fact to borrow money then on hand but were to cover up embezzlements already committed. The majority of the court is of the opinion that a guardian has no right to use the trust funds for his own purposes, that is to say, to convert them to his own use, and that any such use before obtaining an order of the court is a breach of his trust; and when intentionally and deliberately done is sufficient evidence of his unfitness for further trust. In Smith v. Smith (D. C.), 210 Fed. 947, affirmed, 224 Fed. 1, 139 C. C. A. 465, it was held that when a guardian misappropriates the funds of the ward to his own use and then obtains an order from the court authorizing a loan to himself of the same funds, keeping secret the fact of his previous conversion, his conduct constitutes a gross fraud upon the court and renders its order for the loan void, the court remarking that if the disclosure had been made, it would be inconceivable that the court would have made the order for the loan. Of the fatal effect of a failure to make a full, or at least a fair, disclosure to the court in seeking orders in guardianship matters, there is an apt illustration in Union Chevrolet Co. v. Anderson, 162 Miss. 816, 138 So. 593. The majority of the court therefore holds that the orders allowing the loans were void on the ground stated in this paragraph, if the facts as alleged shall be sufficiently sustained on the proof.

4. The fourth question is whether the major portion of the property released as aforesaid and afterwards acquired through mesne conveyances by the defendant life insurance company remains liable, it being the contention of the bill that the releases were void. We are of the opinion that the orders of the court for the releases were not void on the face of the record; and the two trustees having released the first two deeds of trust in the manner provided by sections 2153 and 2155, Code 1930, those two deeds of trust, so far as constructive notice is concerned, disappeared as completely as if

never of record; and as to the third deed of trust there is a misdescription in that instrument by which the property there described is located six miles distant from the property intended to be conveyed. No knowledge is charged by the bill against the purchaser except the constructive notice furnished by the records; and it is well settled in this state that the constructive notice given by a recorded instrument is only of what is actually described in that instrument or which is to be perceived from that instrument and that instrument alone was intended to be described therein. It does not give notice of other deeds or instruments not referred to therein so as to be made a part thereof, nor does it give notice of a description which a diligent inquiry might have disclosed. Simmons v. Hutchinson, 81 Miss. 351, 33 So. 21; Sack v. Gilmer Dry Goods Co., 149 Miss. 296, 115 So. 339. In the latter case there were two deeds which, if taken together, would have disclosed the property intended, but the court held that so far as constructive notice is concerned each deed stood alone; and that is the case here before us. The court is of the opinion therefore that the demurrer of the life insurance company should have been sustained.

5. There arises the question of the relative liability of the several sureties in the three separate guardian's bonds. If the entire guardianship proceeding had been held void, each bond would have been liable only for the money actually received by the guardian while that particular bond was in effect; but the majority of the court holds that the guardianship was not void, and thus the liabilities of the several bonds take a wider range, and according to principles which have already been settled by decisions of this court, but which we think cannot be precisely applied until the facts have been developed in detail upon a full hearing. We therefore do not enter upon a determinative discussion of that question.

The result is that the court holds that the demurrers

of all the defendants were properly overruled, except that of the life insurance company, which should have been sustained.

Affirmed in part, reversed in part, and remanded.

**Griffith, J.**, delivered a specially concurring opinion.

1. Since the decision of this court in Baum v. Greenwald, 95 Miss. 765, 49 So. 836, it has been the general understanding that it is not within the allowance of the law to appoint a guardian of the property of an adult person upon the ground of insanity except and until that adult person has been adjudged insane under a writ de lunatico inquirendo by a jury of six freeholders. This requirement of the law rests upon a fundamental guaranty and is established, moreover, to prevent oppression and the seizure of property by the designs of greed or hatred or other such motives. And being fundamental, the result is that until so adjudged by a jury, a citizen of this state remains in the eyes of the law as if sane so far as guardianship for insanity is concerned. In Ames v. Williams, 72 Miss. 760, 772, 774, 17 So. 762, this state was definitely aligned with those authorities which hold that the appointment of an administrator upon the estate of a living person is void, for there an indispensable or fundamental element of jurisdiction is absent. Upon like principle the appointment of a guardian for a person on the allegation that he is a minor when in fact he was then an adult, would be void for there was no minor before the court, an indispensable element of jurisdiction was absent. Likewise the appointment of a guardian for an adult person upon the allegation that he was a lunatic would be void, if in fact the person had not been so adjudged by a jury, for until so adjudged he is not a lunatic in the law so far as concerns a guardianship of his property on that ground.

The majority has rested its decision, however, on the concluding clause of section 1896, Code 1930, which pro-

vides that the chancery court may appoint a guardian of the estate "of a citizen of this state of unsound mind who may be confined out of this state in an asylum for the insane," and has in effect said that it is immaterial how he happened to be so confined, and that while as citizen of this state he has thrown about him the inviolable guaranties hereinabove mentioned, he loses the right immediately upon his crossing the state line whether he go voluntarily or is carried against his will or is enticed to go. It was a privilege, valued above all others, of the Roman citizen—and one remarked upon throughout all times since that day—that wherever he went he was still a Roman citizen; and a citizen of this state, wherever he may be, should still be invested, so far as the laws of this state are concerned, with all the rights and immunities of a citizen of this state. It seems to me, therefore, that unless the confinement in another state has been upon an inquiry and adjudication substantially the equivalent of a proceeding under a writ de lunatico inquirendo in this state, such a confinement should not be considered sufficient so far as property in this state is concerned. Otherwise it would allow guardianship and the seizure of the property here of some citizen who for some mental trouble, actual or asserted, has sought treatment in another state, or who has been taken or enticed there and confined on false allegations of persons designing through that means to seize the property. The arguments of convenience that a guardian is necessary to an absent and confined patient, are more than displaced by the consideration of the possibilities of what by oppression, enticement, the designs of greed, or of the passions of family disruptions and disputes, and the like, could be brought about by resort to this statute as the majority has construed it.

2. The question whether a guardian as an individual may lawfully borrow the ward's funds from himself as guardian has not often been before courts of last resort, but in those cases where the point has been squarely

presented, the right has been denied and orders of the court attempting to so authorize have been declared void, except where plainly and expressly so allowed by statute. In Re Bates' Guardianship, 70 Okla. 321, 174 Pac. 743, 744, the court said that the county court, although having full jurisdiction of the subject, "is without authority . . . to lend funds of the estate on securities offered by the guardian himself, or by order of court to give validity to any subterfuge in such respect." The question was reviewed in Sowers v. Pollock, 112 Kan. 599, 212 Pac. 103, 30 A. L. R. 458, where the same result was declared, after a full review of those universal principles of the law that no fiduciary shall be allowed to deal or contract in such a manner as shall bring his individual interests into opposition to his duty as trustee. In Brandau v. Greer, 95 Miss. 100, 103, 48 So. 519, 520, 21 Ann. Cas. 1118, our court has strongly pointed to the stated principle that no transaction should be allowed to stand wherein a fiduciary has had a personal interest in the ward's estate and in the administration thereof which would bring his interest into conflict, in any material particular, with that of his ward. The court said: "We but declare as the law what the court's have time and again announced. A trustee can be allowed under the law to have no inducement to neglect the interest of his ward." To allow a guardian to borrow the ward's money on security furnished by himself, produces a situation where it is likely that his interests therein will be to neglect or postpone his ward's interests, and this would seem too plain for discussion. The unfortunate developments in the matter now before us furnish all the illustration necessary of the proposition that no guardian should ever be allowed to borrow his ward's funds, and thereby be placed in a position that, while looking after his own interests, he would lay aside the ward's interests. These principles, and the unwisdom of a departure therefrom, would be manifest to any Legislature, and a statute should not be construed

as authorizing a departure from such sound and salutary principles unless the words of the statute were so plain as to make that construction inescapable. Our statute does not require, and in my opinion does not allow, any such construction, but as to other statutes, it should be construed in the light of well-established general principles. When so construed, it does not authorize the orders for loans to be made by the guardian to himself as individual, such a disposition is not a loan or investment authorized by the statute.

Believing that the court has departed from sound and salutary principles in the two respects above discussed, I must dissent therefrom. I am in accord, however, with the other holdings of the court on all the other points, and with the decree ordered to be entered, and concur therein specially.

**Anderson, J.**, delivered an opinion dissenting in part.

I disagree with that part of the controlling opinion which holds that the chancery court had the power to authorize the guardian to lend the money of his ward to himself. I concur in what Judge GRIFFITH has written on that subject, which is set out in the second paragraph of his opinion.

Wherever the common law prevails, a trustee will not be permitted to deal with himself where his interest and that of the cestui que trust are adverse. That was exactly the relationship of the guardian and ward in this case. Did section 1885, Code 1930, abolish that wise and wholesome common-law principle? It does not do so in so many words, if it does it is by implication—construction. In construing a statute the common law on the subject must always be kept in mind. It must be construed strictly against abrogating the common law. If the common law and the statute can stand together— if there is no irreconcilable conflict—then both must stand; the common law does not go down. It does no

violence to the statute to hold that the Legislature did not intend to authorize a guardian to deal with himself where his interest was on one side and that of his ward on the other.

In Reynolds v. Walker, 29 Miss. 250; Johnson v. Miller, 33 Miss. 553; Roach v. Jelks, 40 Miss. 754; Crump v. Gerock, 40 Miss. 765; Jefferson v. Glover, 46 Miss. 510; and Garland v. Norman, 50 Miss. 238, this question was not decided; it was not involved. Those cases dealt principally with the question as to when a guardian is chargeable with interest on the funds of his ward. They were decided under the statutes then in force, which were the prototypes of the present statute. Beginning with Hutchinson's Code of 1848, section 133, article 1, chapter 36, the statute contained this provision, "and for no balance of money in his hands shall he be charged interest, unless he shall consent to take the same on interest." Article 147 of section 18 of chapter 60, Code of 1857, contains exactly the same language as Hutchinson's Code of 1848. In the Code of 1871, section 1217, the language was changed, and the section reads as follows:

"For no balance of money in his hands, necessary for the support and education of his ward, during the year, shall a guardian be chargeable with interest; but when funds accumulate, over and above the requirements for the support of the ward, the court shall order such surplus funds to be loaned at interest, on good mortgage or personal security; and the chancellor shall, in all cases, see that the security is ample and undoubted."

Beginning with the Code of 1880, section 2105, down to and including the present code, the statute has been in substantially the same language.

The above decisions were all rendered under the statute as it existed in the Codes of 1848, 1857, and 1871. During that period the statute, if not in express language, by clear implication authorized the guardian to take the funds of his ward at interest. By leaving that

provision out of subsequent statutes, the Legislature intended to go back to the common law.

**Ethridge, J.** (concurring in part and dissenting in part).

I concur in the view of the per curiam opinion that the court had jurisdiction and power to appoint J. D. Crymes, Sr., as guardian of J. D. Crymes, Jr., and also in the conclusion that the guardian had power under section 1885, Code 1930, to borrow funds from himself by giving proper security under the order of the court made in that behalf.

I dissent from the conclusion that, on the statement of the bill taken in connection with the exhibits thereto, there was any fraud practiced on the court. The guardian was rightfully in custody of the funds, and the sureties on his bond are not liable therefor, where they have been loaned on security approved by the court.

The chancery court, as to the matters here dealt with is a court of general jurisdiction, and every presumption is indulged in favor of the validity of its judgments. Under section 159 of the state Constitution, the chancery court is given full jurisdiction over the business of minors and of cases of idiots, lunacy, and persons of unsound minds. The Constitution thus giving the chancery court full jurisdiction over such matters, it cannot be deprived of that jurisdiction by any act of the Legislature, nor can the Legislature compel the chancery court to accept the judgment of a jury as to any such matters.

The original bill contains the following allegations: "That prior to July 28, 1922, J. D. Crymes, Jr., was committed to an insane asylum without a jury and on July 28, 1922, J. D. Crymes, Sr., father of the lunatic was appointed guardian of the estate of J. D. Crymes, Jr., by decree of the chancery court at Lauderdale county, Mississippi, when he executed a guardian bond approved by the chancery clerk of Lauderdale county, Mis-

sissippi, in the sum of one thousand dollars signed as surety by Bob Wall and D. W. Terry, deceased, defendants, a true copy of which bond is attached hereto as Exhibit A and made a part hereof which bond has never been released by decree of the court. That on December 7, 1922, the deceased guardian filed an inventory showing cash receipts of one thousand two hundred dollars and one cent, which inventory was approved by decree of the court, which sum of money the deceased guardian petitioned the court for authority to loan said sum of one thousand two hundred dollars by himself as guardian to himself individually and under such authority as was granted by decree of this court made loan giving to himself as guardian a note secured by deed of trust on land belonging to the guardian individually.''

The petition for appointment as guardian reads as follows:

''John D. Crymes, Sr., petitioner, with due respect, shows unto the court, That John D. Crymes, Sr., petitioner, is a resident citizen of Lauderdale county, state of Mississippi, and that John D. Crymes, Jr., is the son of the petitioner, and is also a resident citizen of Lauderdale county, state of Mississippi. That John D. Crymes, Jr., lived with his father until the late world war when he enlisted as a sailor and served in the United States Navy. That while in such service, the said John D. Crymes, Jr., was upon a boat which was torpedoed and it is the belief of petitioner that he suffered some trouble at that time which later affected his mind in that the said John D. Crymes, Jr., has since that time become a victim to some mental disorder, and is now incapable of attending to his own affairs. That, at present, the said John D. Crymes, Jr., is in the Government Hospital at Augusta, Georgia. That certain sums of money are due him from the United States Government, because of the fact that he was injured while in the service of the United States Government, but that it is impossible that said sums of money be collected from

the Government until a guardian has been appointed for said John D. Crymes, Jr. That the said John D. Crymes, Jr., has been treated for said mental disorder, but that he is now unable to care for his affairs. That petitioner is the father of said John D. Crymes, Jr., and is a fit and proper person to act as guardian for said John D. Crymes, Jr., and is willing to so act. That the said John D. Crymes, Jr., is an adult, being twenty-three years of age. That the amount of money that petitioner will handle as guardian of said minor will not, in the opinion of petitioner, exceed one thousand dollars.

"Premises considered, petitioner prays that letters of guardianship be issued to him, appointing him guardian of said John D. Crymes, Jr., upon his furnishing bond in the sum of one thousand dollars, conditioned according to law, and upon his taking the oath prescribed by law.

"And if petitioner has prayed for wrong or insufficient relief, then for such other, further, different and general relief as petitioner may be entitled to, and in duty bound will ever pray."

It will be seen from this petition and bill, that it is alleged that John D. Crymes, Jr., has become afflicted with some mental disorder and is confined in a government hospital for the insane at Augusta, Georgia.

By section 1894, Code 1930, guardians for persons of unsound mind are provided for, and section 1896, Code 1930, provides for guardians for insane persons who have property in this state, although they may be confined in an institution in another state.

It is clear from section 1896, Code 1930, that the court had the power to appoint a guardian for John D. Crymes, Jr., who was then confined in an insane hospital outside the state. No jury is required under this section. Where a person is incapable to care for himself and has property in this state, the chancery court has the power to appoint a guardian for his estate in the county in which

the property is situated. It would be impossible to serve legal notice upon a non compos mentis in a foreign state, or for him to be present in this state for a jury to pass upon such proposition. The power of the chancery court being full and plenary, and such power having been conferred thereupon by the Constitution, its orders are not void where the petition contains sufficient facts to show that the person is non compos mentis and is confined outside the state, which the bill and petition for guardianship clearly show.

In Neely et al. v. Craig et al., 162 Miss. 712, 139 So. 835, we held that the court, having full constitutional jurisdiction, is not entirely dependent upon statutes respecting procedure; that the court has full power to sell the property of infants for reinvestment, and that, where a court, having full constitutional jurisdiction, has acted under procedure adjudged sufficient, its judgment cannot be collaterally attacked.

In Kelly v. Neville, 136 Miss. 429, 101 So. 565, we held that under section 159 of the Constitution, the chancery court has full jurisdiction of all matters in equity, matters testamentary, administration, and minors' business, and has the inherent power to sell the estate of a minor for reinvestment in better paying property, whether the minor be in existence, or an unborn remainderman.

In the case of State v. Marshall, 100 Miss. 626, 56 So. 792, Ann. Cas. 1914A, 434, we held that a court of equity cannot refuse to enforce penalties created by statute, but that rule has no application to any but penalties imposed by private contract. We also held that under section 159 of the Constitution, the chancery court has full jurisdiction in all matters of equity; that it is within its power to adjudge what is a matter of equity; and that when the court takes jurisdiction of a subject it ought to dispose of it fully and finally.

In Bank v. Duncan, 52 Miss. 740, we held that "full jurisdiction" implies that nothing is reserved, and when

the court takes hold of a subject, it ought to dispose of it fully and finally.

It is plain from general principles of law that a court of general jurisdiction will be presumed to have done everything required to be done in the exercise of its jurisdiction, and under the decisions cited, supra, the chancery court had before it questions over which it had full jurisdiction, and we must assume that the chancery court made due inquiry into whether the ward was non compos mentis, and if he was in a proper institution.

The bill itself alleges that the ward in the case at bar was confined in a hospital for the insane, and the exhibits to the bill show that he was being treated there for mental disorder and was incapable of attending to his own business.

In my view, the court can always, on proper application, accompanied by the bond required by law, appoint a suitable person as guardian of a non compos mentis, whether he is within the state or outside the state, or whether he is confined in a hospital for the insane or not. The Constitution saw proper to confer upon the chancery court full jurisdiction over this matter, independent of legislative action. It is true, in the absence of legislative proceedings, the rights of parties would be governed by the common law. The Legislature may regulate the proceedings, but it cannot deprive the chancery court of jurisdiction over personal estates of lunatics or persons non compos mentis. In the exercise of this jurisdiction, the chancery court is the parens patriae of persons non compos mentis and cannot be deprived of its jurisdiction, and, being a court of general jurisdiction, everything will be presumed in aid of that power.

As the case is here on a demurrer, the allegation that John D. Crymes, Jr., is confined in an insane asylum is bound to be true, and it is clearly shown in the record that he is confined in such hospital in Augusta, Georgia.

Chapter 34, Code 1930 (section 1863 et seq.), confers very large powers upon chancery courts as to all matters

of guardianship, and section 1885 thereof gives the chancery court the power to designate upon what security, and to what persons, the guardian may lend money belonging to his ward. Money may be loaned upon good security, and, when passed upon by the court and adjudged to be sufficient, and when so made, responsibility shall not attach thereafter to the guardian. In the case before us, the orders of the court show that the court adjudged the sufficiency of the security and authorized the loan, which was made in pursuance thereof. The bondsmen of the guardian are not responsible, either personally or on their bonds, where the chancery court has exercised jurisdiction and passed upon the security and the propriety of the loan. The right of a guardian to use money of his ward, at interest, has been recognized in this state. See Davis v. Harris, 13 Smedes & M. 10, where the court said: ''Whenever a guardian has money of his ward in his hands, the probate court will either permit him to take it on interest, or direct him to place it at interest, taking bond to the orphan, with security approved by the court.'' See, also, Jefferson v. Glover, 46 Miss. 510 (second syl.), and page 521; Roach v. Jelks, 40 Miss. 754, at page 756; Crump v. Gerock, 40 Miss. 765; Reynolds v. Walker, 29 Miss. 250; Johnson v. Miller, 33 Miss. 553; Garland v. Norman, 50 Miss. 238.

It is none of our concern that, after the chancery court has approved a loan, the security may, for some reason, become insufficient and the funds be lost. The record shows fully and conclusively that the property given as security for the loans at the time each was made was sufficient. When the court passed an order approving the third loan and releasing the prior deeds of trust, then the prior sureties were released. Whatever may have been the fact as to whether the guardian had any money in his possession or not, the security given for the money stood in the place thereof.

Assuming merely for the purpose of argument, that

the guardian had, in fact, converted the money to his own use, still he had ample security to offset it, and this security had been accepted by the court and the prior bondsmen released.

However, the supplemental bill undertaking to charge fraud upon the court, when considered in connection with the exhibits to both bills, is insufficient to show real embezzlement or willful misappropriation of the money. It is alleged in this bill that the deceased guardian had taken the ward's money and given the deed of trust when the prior deed of trust was unpaid and uncanceled; and that the same was for the guardian's own benefit, and that, at the time the deceased guardian petitioned the court to be allowed to lend himself said trust funds, he represented to the court that certain facts were true, which were not, in fact, true. The first part of the allegation implies that the guardian placed the trust funds in the bank to his own personal account. If that was true, it was not embezzlement to place funds in the bank for safekeeping, and when he gave security which was approved by the court, the loan so authorized stood in lieu of, and represented the money itself, and the loans were valid. The court could have required him to produce the money, but until the court issued such order it was, in legal contemplation, in the possession of the guardian. The record shows that, subsequent to the taking of the last deed of trust, a portion of the property embraced in the security for that deed of trust had been sold for an amount in excess of the total amount borrowed, and that the remainder of the property embraced in the security had been inquired of with the view of purchasing it at a price largely in excess of the total amount of money due by the guardian.

The exhibits to the bill, including the decrees of the court, show that some of the money was invested in improvement of the property used as security.

It must be remembered that this transaction originated in 1922 and the guardian died in 1930, and that during

this period values of property had constantly risen. The record shows that the lands offered as security were improved by being divided into lots and by installing a water system upon the property. The chancellor, so to speak, was upon the ground, and was familiar with the conditions then existing, and we certainly can presume, what was a fact, that the property was, at all times, more than sufficient to secure the trust funds, until after the third bondsman was accepted and approved by the court. The order of the court provided for the giving of a deed of trust upon the property, which was actually done, and the security was then more than sufficient to fully secure a repayment of the loan. In other words, there never was, at a time prior to the great depression which began in 1929, any doubt as to the security being more than ample to repay the loans, and the property was adjudged by the court to be more than sufficient to pay the actual loans. This, certainly, would not constitute fraud. If conditions had remained as they were before 1929, no possible loss would have resulted. It is shown that one of the banks of Meridian, and one of the building and loan associations there, made loans upon this property subject to the deeds of trust in favor of the ward, showing that prudent and experienced business men regarded the security as being more than ample to pay the debt.

This being true, the bondsmen in the first two deeds of trust were certainly entitled to rely upon their discharge and the acceptance of suitable successors. The fact that the third bondsman, the surety company, is in liquidation, is wholly immaterial, so far as the liability of the first two bonds is concerned. The surety company was then authorized to do business in this state and was in a solvent condition, and the guardian made actual reports which were received and approved by the court. How, then, can it be said, in view of these facts, that fraud was perpetrated upon the court? The chancery court had authority to release the bondsmen from fur-

ther liability, and its order doing so had the effect of accepting the security and retaining it in lieu of the actual cash.

I think the court was authorized, under the conditions then existing, to release, as it did, the property from the last deed of trust. The proof showed that, at the time the chancellor issued this decree, the security remaining was more than ample to secure the loan.

We all know that market values have their high and low points, and that many strong financial institutions have gone down in the late financial storm. Likewise, many prudent, solvent business men have become bankrupts, not because of lack of judgment, but due to the terrific conditions which have existed during the past few years.

Although the complainant, Martha Crymes, filed her bill against the appellant, the Pan-American Life Insurance Company, she, herself, has not made her inventory or report to the court, nor shown what property she received. It is true her successor has filed an answer to the bill showing inadequate property and funds to pay the debts probated against the estate. But there is no showing that the lands owned by J. D. Crymes, Sr., guardian, when he died, have proved inadequate, for no sale has been made.

In United States F. & G. Co. v. Dickson, 111 Miss. 752, 72 So. 150, we held that, even if a guardian be held liable for funds lost by failure of a bank in which such funds were deposited, she should be accorded opportunity to make good the loss, and to render an account of her stewardship on a final accounting of her trust before being subject to the ward's suit.

In Cohn v. Winslow, 115 Miss. 275, 76 So. 264, we held that when the chancellor designates the person to whom the ward's money may be loaned, and the loan is so made, responsibility shall not thereafter attach to the guardian.

In Re Adams' Guardianship, 152 So. 836, we held that

where a guardian applied to the chancery court for an order authorizing a time deposit of the ward's money, particularly where such deposit was then protected by the depositor's guaranty fund, he was not liable for any loss during the time the funds were secured by the guaranty law. It is true we also held that after these conditions changed, it was the duty of the guardian to act promptly in accordance with the changed conditions.

In Coffin v. Bramlitt, 42 Miss. 194, 97 Am. Dec. 449, it was shown that when a guardian lends the ward's money to be repaid in a depreciated currency, he is responsible for the loss.

Here the guardian was authorized by the court to lend the money to himself, upon ample security, and neither he, nor his sureties, are liable for the resulting loss. Where the court approved the loan, and the security was ample, the sureties cannot be held liable, as they are not obliged to know more about the loan than the chancellor. In my view, it would be impossible to hold the sureties liable for loss, if any, that may occur by reason of depreciation of the security given, due to causes beyond their control.

I am, therefore, of the opinion that the bill does not state a cause of action against those who demurred to it, and that the demurrer should have been sustained.